ALLSTATE INSURANCE COMPANY,
Petitioner,

v.

Ruth HALLMAN, Respondent.

No. 03–0957.

Supreme Court of Texas.

Argued Oct. 20, 2004.

Decided March 11, 2005.

ment in Allstate's favor. The court of appeals reversed the trial court's judgment and remanded for further proceedings, holding that Allstate had a duty to defend and indemnify Hallman in the limestone mining litigation. 114 S.W.3d 656, 663. Because we conclude that damages to third parties caused by commercial limestone mining conducted on an insured's property fall within the policy's business pursuits exclusion, we reverse the court of appeals' judgment and render judgment for Allstate.

Roy L. Stacy, Pamela J. Touchstone, Stacy & Condor, LLP, Dallas, for Petitioner.

David Taubenfeld, Erika Lea Blomquist, Matthew Scott Carol, Charles George Orr, Haynes and Boone, LLP, Dallas, for Respondent.

Chief Justice JEFFERSON delivered the opinion of the Court.

In this case we must determine whether, under a homeowners insurance policy's terms, an insurer has a duty to defend and indemnify an insured's potential liability for damages resulting from limestone mining operations conducted on the insured's property. Neighboring property owners sued Ruth Hallman ("Hallman") for damages related to limestone mining on her property. Hallman sought coverage under her homeowners insurance policy ("the policy") with Allstate Insurance Company ("Allstate"), requesting that Allstate defend and indemnify her in the lawsuit. Allstate and Hallman both sought a declaratory judgment to determine whether the policy covered the underlying litigation. The trial court granted summary judg-

# I

## Background

In 1995, Hallman leased property she owns in rural Kaufman County to Norton Crushing, Inc. ("Norton") for limestone mining.[1] In 1996, neighboring landowners sued Hallman, Norton, and all subcontractors involved in the mining project, alleging that the blasting from the mining damaged their property and their health. Hallman filed a claim under the policy requesting defense and indemnification. Allstate agreed to defend Hallman under a reservation of rights but filed this declaratory judgment action seeking a determination that Hallman's claim was not covered under the policy's terms. Hallman counterclaimed seeking a declaration that Allstate had a duty to defend and indemnify her in the underlying litigation. Both parties sought attorney's fees.

Allstate moved for summary judgment, arguing that the injuries and damages relating to the limestone mining did not constitute an "occurrence" as required for coverage under the policy, and alternatively, that the mining operations were excepted from coverage under the policy's busi-

---

1. Meridien Aggregates, Co., L.L.P. ("Meridien") purchased Norton's interest in 1999 and now operates the lease.

ness pursuits exclusion. Hallman moved for partial summary judgment, asserting that she was entitled to a defense because her neighbors' allegations constituted an "occurrence" as defined in the policy. The trial court granted Allstate's motion, denied Hallman's, and denied both parties' requests for attorney's fees. The court of appeals reversed, concluding that the policy covered Hallman's claim because: (1) the mining damages constituted an "occurrence," and (2) the business pursuits exclusion did not apply. 114 S.W.3d at 663. The court of appeals remanded the attorney's fees issue to the trial court for further proceedings. *Id.* at 663–64. We granted Allstate's petition for review to determine whether the policy covers potential liability for damages from commercial limestone mining. 47 Tex. Sup.Ct. J. 753 (July 2, 2004).

During oral argument before this Court, the parties announced that the underlying lawsuit between Hallman and her neighbors had recently concluded with a jury verdict in Hallman's favor. Allstate provided Hallman with a defense throughout the trial and does not intend to seek reimbursement for the defense costs.

## II

### Mootness

■ As a preliminary matter, we must consider whether the conclusion of the underlying litigation renders this case moot. The main issue here is whether Allstate has a duty to defend and indemnify Hallman in the mining litigation. Allstate, however, has already provided the requested defense, for which it will not seek reimbursement. Additionally, because Hallman was not found liable at trial, there is nothing for Allstate to indemnify. Nevertheless, both parties maintain that a justiciable controversy remains because Hallman continues to seek an award of at-

torney's fees for expenses incurred in defending against Allstate's declaratory judgment action and in pursuing her own declaratory relief.

■ We agree with the parties that this case is not moot. A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *Bd. of Adjustment of San Antonio v. Wende,* 92 S.W.3d 424, 427 (Tex. 2002). In *Camarena v. Texas Employment Commission,* 754 S.W.2d 149, 151 (Tex.1988), we held that a dispute over attorneys fees is a live controversy. In that declaratory judgment action, farm workers sued to challenge the constitutionality of the Texas Unemployment Compensation Act's ("TUCA") agricultural exemption. *Id.* at 150. The trial court held that the act was unconstitutional but found that sovereign immunity barred the farm workers' request for attorney's fees. *Id.* Four months later, the Legislature amended the TUCA, rectifying the offending provision. *Id.* Consequently, the trial court modified its judgment, holding that the amended act was constitutional and enjoining the former act's enforcement. *Id.* The Texas Employment Commission appealed, arguing that the amendment rendered the case moot. *Id.* The farm workers cross-appealed, contesting the denial of attorney's fees. *Id.* The court of appeals held that the case was moot and that attorney's fees were barred by sovereign immunity. *Id.* at 150–151. We disagreed, holding:

Clearly, a controversy exists between the farm workers and TEC. The "live" issue in controversy is whether or not the farm workers have a legally cognizable interest in recovering their attorney's fees and costs. The fact that the Legislature wisely undertook action to bring the farm workers within the scope of TUCA does not moot or void the workers' interest in obtaining attorneys

fees and costs for the successful disposition of their claim. Contrary to the court of appeals' suggestion, the attorney's fees issue need not be severed in order to be considered; it is an integral part of the farm workers' claim and as such breathes life into the appeal. Due to the existence of the "live" issue of attorney's fees and costs, we hold that the suit was not moot.

*Id.* at 151.

Similarly, Hallman's remaining interest in obtaining attorney's fees "breathes life" into this appeal and prevents it from being moot. *See id.* The parties correctly point out that in order to resolve the attorney's fees dispute, we must first determine whether Allstate had a duty to defend and indemnify under the policy. In a declaratory judgment proceeding, the trial court has the discretion to award "equitable and just" attorney's fees. Tex. Civ. Prac. & Rem.Code § 37.009. Here, the trial court, having found against Hallman on the coverage issue, also denied her request for attorney's fees. Because the court of appeals found that Hallman prevailed on the coverage issue, it remanded the attorney's fees question to the trial court. 114 S.W.3d at 663–64. Our decision in this case will resolve whether Allstate had a duty to defend. The controversy is live because an affirmative answer would necessitate a remand to the trial court to consider whether an award of attorney's fees is appropriate in light of the changed status of prevailing parties. Accordingly, we will address the merits of this coverage dispute.

### III

### Discussion

■ To determine an insurer's duty to defend, we look at the allegations in the pleadings and the insurance policy's language. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965). If the pleadings do not allege facts within the scope of the policy's coverage, an insurer does not have a duty to defend. *Am. Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994). However, in the event of an ambiguity, we construe the pleadings liberally, resolving any doubt in favor of coverage. *Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d at 141; *Heyden Newport Chem. Corp.,* 387 S.W.2d at 26.

Under the terms of the policy, Allstate has a duty to defend Hallman against a suit alleging damages caused by an "occurrence." However, the policy specifically excludes from coverage: "bodily injury or property damage arising out of or in connection with a business engaged in by an insured. But this exclusion does not apply to activities which are ordinarily incidental to non-business pursuits." "Business" is defined as "includ[ing] trade, profession or occupation." Allstate argues that Hallman's claim is barred from coverage under this business pursuits exclusion.

■ Although the business pursuits exclusion is a fairly common provision of insurance policies, we have never directly addressed its application.[2] The parties and the court of appeals relied on the standard set forth by the San Antonio Court of Appeals in *United Services Automobile Ass'n v. Pennington,* 810 S.W.2d 777, 778–80 (Tex.App.-San Antonio 1991, writ denied), a case involving a business pursuits exclusion provision substantially

---

**2.** We have, however, addressed the "activities incidental to non-business pursuits" exception to the exclusion. *See State Farm Fire & Cas.* *Co. v. Reed,* 873 S.W.2d 698, 698–701 (Tex. 1993).

identical to the one here. The *Pennington* court, after reviewing the dictionary definitions of "trade," "profession," and "occupation," as well as case law from other jurisdictions, defined the "business pursuits" inquiry as involving two elements: "(1) continuity or regularity of the activity, and (2) a profit motive, usually as a means of livelihood, gainful employment, earning a living, procuring subsistence or financial gain, a commercial transaction or engagement." *Id.* at 780 (citations omitted). Regarding the second element, the court further noted: "The profit need not be realized—the issue is the expectation or anticipation for profit in the future—since often business ventures result in a loss." *Id.*

Most jurisdictions follow similar versions of this two-part inquiry when construing business pursuits exclusions. *See, e.g., Sun Alliance Ins. Co. of P.R., Inc. v. Soto,* 836 F.2d 834, 836 (3d Cir.1988); *Stuart v. Am. States Ins. Co.* 134 Wash.2d 814, 953 P.2d 462, 465 (1998); *Frankenmuth Mut. Ins. Co. v. Kompus,* 135 Mich.App. 667, 354 N.W.2d 303, 307–308 (1984); *see also* Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 128:13 (3d ed. 1997 & Supp.2004). A few jurisdictions, however, limit the exclusion's application to those activities that constitute an insured's principal occupation. *See, e.g., Brown v. Peninsular Fire Ins. Co.,* 171 Ga.App. 507, 320 S.E.2d 208, 209 (1984); *Asbury v. Ind. Union Mut. Ins. Co.,* 441 N.E.2d 232, 239 (Ind.Ct.App.1982). Because the policy's definition of business as "including trade, profession or occupation" encompasses more than an insured's primary occupation, we conclude that the majority approach more accurately describes the exclusion's parameters. Accordingly, we adopt the two-part standard articulated in *Pennington* for determining whether a claim is excluded from coverage under the business pursuits exclusion. *See Pennington,* 810 S.W.2d at 780.

■ Applying the *Pennington* standard, the court of appeals concluded that the underlying petition did not allege continuity of activity because Hallman entered into only one lease agreement, which was executed nearly ten years ago. 114 S.W.3d at 662. The court further noted the petition's failure to allege that Hallman leased her property as a means of livelihood, or earning a living, or that her principal business was leasing property. *Id.* Based on these conclusions, the court of appeals held that the business pursuits exclusion did not apply to Hallman's claim. *See id.* at 662–63.

We disagree. By narrowly limiting its focus to Hallman's initial execution of the lease, the court of appeals misconstrued the nature of commercial leasing activity. The pleadings establish that the mining activity conducted on Hallman's property pursuant to the lease began in 1995, was ongoing at the time the plaintiffs initiated their suit in 1996, and remained ongoing at the time the plaintiffs filed their sixth amended petition in 2001. Although Hallman executed only one lease, until that lease expires, she is perpetually engaged in the continuous act of leasing her property to the mining company. Thus, the limestone mining lease meets the continuity requirement of the business pursuits exclusion.

Next, we consider whether profit was Hallman's motivation for leasing her property. The court of appeals, noting that courts are limited to the language in the pleadings and the policy when determining an insurer's duty to defend, concluded that the lease failed to meet the profit motive requirement. 114 S.W.3d at 662–63. Admittedly, the pleadings do not contain any reference to Hallman's pecuniary interest in the lease, nor do they expound on her motive for leasing her property. However,

we conclude that, in this circumstance, a profit motive can be inferred from the nature of the activity. One generally does not allow limestone mining with dynamite blasting to occur on his or her property without some expectation of remuneration or monetary gain. *See* Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 128:13 (3d ed.1997) (noting that courts look "particularly to the nature of the activity" when determining if an activity constitutes a "business pursuit"); *cf. In re San Juan Dupont Plaza Hotel Fire Litig.,* 789 F.Supp. 1212, 1220 (D.P.R.1992) (holding that business pursuits exclusion defeated coverage because "[i]nvestment activities are commercial ventures which, by their very nature, are entered into with the intent to earn profit"); *Vallas v. Cincinnati Ins. Co.,* 624 So.2d 568, 571 (Ala. 1993) (finding business pursuits exclusion applicable and noting "we cannot say that the limited partnership, which was formed to buy and sell investment real property for capital gain, was not 'an undertaking ... for gain [or] profit' "); *State Farm Fire & Cas. Co. v. Drasin,* 152 Cal.App.3d 864, 199 Cal.Rptr. 749, 750, 753 (1984) (claims arising from partnership agreement to acquire mining leases fell under business pursuits exclusion where "[t]he purpose of acquiring the mining leases was to enjoy the production of income, profits and write-offs incidental to the mining operations").

Furthermore, as numerous courts have recognized, the purpose of the business pursuits exclusion is to lower homeowners insurance premiums by removing coverage for activities that are not typically associated with the operation and maintenance of one's home. *See, e.g., Buirkle v. Hanover Ins. Cos.,* 832 F.Supp. 469, 486–487 (D.Mass.1993); *Kepner v. W. Fire Ins. Co.,* 109 Ariz. 329, 509 P.2d 222, 223 (1973); *LeBlanc v. Broussard,* 396 So.2d 535, 536 (La.Ct.App.1981). Commercial limestone mining is not an activity typically associated with owning and maintaining a home. Thus, the limestone mining lease at issue here is exactly the type of commercial enterprise that the business pursuits provision was designed to exclude.

We hold that Hallman's lease to Norton constituted a business pursuit and therefore the allegations in the underlying litigation are excluded from coverage under the policy.

## IV

### Conclusion

Therefore, even if the allegations in the underlying lawsuit state an "occurrence,"—a question we do not reach—we nevertheless conclude that the business pursuits exclusion applies and bars coverage. Because the trial court reached the same conclusion and denied Hallman's request for fees, there is no need to remand this case to the trial court for a determination of Hallman's request for attorney's fees. Accordingly, we reverse the court of appeals' judgment and render judgment for Allstate. *See* Tex.R.App. P 60.2(c).