**WILLIAMS CONSOLIDATED I, LTD./ BSI HOLDINGS, INC., d/b/a Williams Insulation Company of Houston, Inc., Appellant**

v.

**TIG INSURANCE COMPANY, Appellee.**

No. 14–06–00075–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 31, 2007.

---

Joseph Loiacono II, Richard F. Jacobs, Austin, for appellant.

Charles A. Watson, Jacob Allen Deleon, Robert Shults, Houston, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

This case arises out of an insurance-coverage dispute under a commercial general liability policy. The insurer and the insured filed cross-motions for summary judgment as to the insurer's duty to defend and indemnify the insured against claims of a third party seeking to recover for damages allegedly suffered as a result of work performed by the insured. The trial court granted the insurer's motion for summary judgment and denied the insured's motion for summary judgment. We conclude that the trial court erred in granting the insurer's motion and in denying the insured's motion as to the duty-to-defend issue, but did not err in denying the remainder of the insured's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Williams Consolidated I, Ltd./BSI Holdings, Inc., d/b/a Williams Insulation Company of Houston, Inc. (hereinafter "Williams") obtained general commercial liability insurance from appellee/defendant TIG Insurance Company (hereinafter "TIG") in connection with work performed in Williams's business. TIG issued a commercial general liability policy that had a coverage period beginning on August 1, 1999 and ending on May 1, 2001 (hereinafter "CGL Policy"). Subsequently, on June 5, 2002, Mark and Carol Mokry filed suit against Williams asserting claims related to its performance of work as a subcontractor on the 1991 construction of their home.

The Mokrys, who also sued the home builder, alleged, among other things, that during the construction of their home, the vapor barrier was wrongly installed on the interior face of the exterior wood-framed wall. They claimed that this improper installation caused moisture to condense on and within the cavity, leading to the growth of mold and mildew. The Mokrys alleged that the design, construction, and installation of the vapor barrier was not in accordance with the plans and specifications and was not performed in a good and workmanlike manner. As a result, the Mokrys asserted, mold grew in their home. They became aware of mold in 2000, and on September 8, 2000, the Mokry family moved out of their home because of health concerns relating to the presence of mold. The Mokrys claimed that the mold contamination caused them illness and forced them to leave the dwelling. They also sought damages for alleged losses resulting from the destruction of certain possessions and the remediation of their home.

Williams requested that TIG provide a defense and indemnification relative to the Mokrys' claims. TIG denied that it had a duty to defend Williams or to indemnify Williams. TIG based this denial on the "Prior Incident(s) and Prior Construction Defects Exclusion" in the CGL Policy (hereinafter the "Exclusion"). Williams then filed suit, contending the following in its live pleading:

- TIG issued the CGL Policy in Texas.
- On June 4, 2003, TIG denied Williams's demand for defense and indemnity as to the Mokrys' claims.
- The Mokrys' claims have been settled, and Williams was forced to pay $47,500 of its own money to settle the claims, as a result of TIG's refusal to provide indemnity.
- Williams seeks a declaratory judgment that (1) TIG had a duty under the CGL Policy to defend Williams as to the Mokrys' claims and (2) TIG has a duty to indemnify Williams as to the Mokrys' claims.
- Williams seeks $47,500 in damages for breach of the CGL Policy.
- Williams seeks its reasonable attorney's fees under Chapter 37, or in the alternative, Chapter 38 of the Texas Civil Practice and Remedies Code.[1]

Williams moved for summary judgment, contending, among other things, the following:

- As a matter of law, TIG breached its duty to defend Williams against the Mokrys' claims.
- TIG breached its duty to indemnify Williams against the Mokrys' claims causing Williams $47,500 in damages.
- TIG cannot dispute coverage based on the Exclusion because TIG has not received the necessary permission from the Texas Department of Insurance to use the Exclusion, as required by former article 5.13-2, section 8 of the Texas Insurance Code.
- As a matter of law, TIG must pay Williams's reasonable and necessary attorney's fees under Chapter 37 or Chapter 38.

TIG also moved for summary judgment, contending, among other things, the following:

- Based on the Exclusion, TIG does not have a duty to indemnify Williams against the Mokrys' claims as a matter of law.
- Williams has offered no evidence that the alleged damaging process did not begin at the Mokry residence before the CGL Policy first took effect.
- As a matter of law, TIG does not have a duty to indemnify Williams against the Mokrys' claims because of uncontroverted evidence that mold formed in the Mokrys' home within two years after the Mokrys' 1991 move-in.
- Because the CGL Policy was not delivered or issued for delivery in Texas, TIG was not required to obtain permission from the Texas Department of Insurance to use the Exclusion.
- TIG is not liable to pay Williams's reasonable and necessary attorney's fees under Chapter 37 or Chapter 38 because it owes no duty to indemnify.

The trial court granted TIG's motion for summary judgment without specifying the grounds and denied Williams's motion. Challenging the trial court's rulings, Williams asserts the following issues on appeal:

---

1. Any reference in this opinion to a chapter is a reference to a chapter of the Texas Civil Practice and Remedies Code.

- As a matter of law, TIG breached its duty to defend Williams against the Mokrys' claims, and even though Williams's defense costs were paid by another insurer, this issue is not moot because it is relevant to whether Williams is entitled to attorney's fees under Chapter 37.

- As a matter of law, TIG breached its duty to indemnify Williams against the Mokrys' claims causing Williams $47,500 in damages.

- The Exclusion is invalid because TIG has not received the necessary permission from the Texas Department of Insurance to use the Exclusion, as required by former article 5.13–2, section 8 of the Texas Insurance Code.

- Even if the Exclusion were valid and did apply, the proper inquiry under that Exclusion would not be when mold first formed in the Mokrys' home but rather when "property damage" first occurred or began. Because TIG produced no such evidence, the trial court erred in granting its motion for summary judgment.

- As a matter of law, TIG must pay Williams's reasonable and necessary attorney's fees under Chapter 37 or Chapter 38.

## II. STANDARDS OF REVIEW

In reviewing a traditional motion for summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Id.* When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

We may review the trial court's denial of Williams's motion because in it Williams sought a final summary judgment. *See CU Lloyd's of Texas v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998). A movant seeking a traditional summary judgment must establish its right to that relief by conclusively proving all elements of the movant's claim or defense as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000). When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *INAC Corp. v. Underwriters at Lloyd's*, 56 S.W.3d 242, 247 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Because each party was a movant, the burden for each was the same: to establish entitlement to a summary judgment by conclusively proving all the elements of the claim or defense as a matter of law. *Id.* In reviewing the trial court's rulings on these cross-motions, we must consider all summary-judgment evidence, determine all issues presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co.*, 22 S.W.3d at 872.

## III. ANALYSIS

### A. Is the duty-to-defend issue moot?

TIG asserts the duty-to-defend issue is moot because the Mokrys' claims against Williams have been settled and another insurer has paid for Williams's defense. While acknowledging these facts, Williams nonetheless argues that the issue of TIG's duty to defend is not moot be-

cause Williams seeks Chapter 37 attorney's fees.

The Texas Supreme Court addressed this issue in *Allstate Insurance Co. v. Hallman,* in a somewhat different context, but its reasoning in that case dictates the answer to the mootness question in this case. *See* 159 S.W.3d 640 (Tex.2005). In *Hallman,* an insurer asserted a declaratory-judgment action against its insured, seeking a declaration that it owed no duty to defend or indemnify the insured against a lawsuit involving third-party claims. *See id.* at 641. The insured counterclaimed, seeking a declaratory judgment that the insurer did have a duty to defend and indemnify, and both parties sought attorney's fees. *See id.* The third-party lawsuit subsequently concluded with a jury verdict that the insured had no liability. *See id.* Furthermore, the insurer had provided a defense to the insured under reservation of rights, and the insurer did not intend to seek reimbursement for the costs of this defense. *See id.* On appeal, the Texas Supreme Court held that the issues regarding the insurer's duty to defend and indemnify were not moot because the insured continued to seek attorney's fees under Chapter 37 and continued to appeal the trial court's denial of these fees after the trial court concluded the insurer had no duty to defend or indemnify as a matter of law. *See id.* at 642–43. The Texas Supreme Court held that these issues regarding the insurer's duty to defend or indemnify would determine whether the Texas Supreme Court would affirm the trial court's denial of attorney's fees or would reverse the trial court's judgment and remand for reconsideration of the attorney's fees issue in light of the different determination of the defense and indemnity issues on appeal. *See id.* Therefore, the *Hallman* court held that the appeal was not moot. *See id.* Accordingly, in the case under review, the duty-to-defend is-

sue is not moot because Williams is appealing the trial court's denial of its request for Chapter 37 attorney's fees. *See id.*

## B. What is the plain meaning of the Exclusion?

To adjudicate the defense and indemnity issues, this court must determine the meaning of the Exclusion, which states:

> No insurance coverage is provided under this policy to defend or indemnify any insured for "bodily injury," "property damage," "personal injury," or "advertising injury" **which has first occurred or begun** prior to the effective date of this policy, regardless of whether repeated or continued exposure to conditions which were a cause of such for [sic] "bodily injury," "property damage," "personal injury" or "advertising injury" occurs during the period of this policy and cause [sic] additional, progressive or further "bodily injury," "property damage," "personal injury," or "advertising injury" all of which is excluded from coverage.

> This exclusion shall apply whether or not the Insured's legal obligation to pay damages has been established as of the inception date of this policy.

(emphasis added). The CGL Policy defines "property damage" in pertinent part as "[p]hysical injury to tangible property, including all resulting loss of use of that property." The CGL Policy states that "all such loss of use shall be deemed to occur at the time of the physical injury that caused it." The CGL Policy also defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

■■■ We apply the ordinary rules of contract construction to insurance policies. *See Kelley–Coppedge, Inc. v. Highlands*

*Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the language of the policy. *See id.* In determining the intention of the parties, we look only within the four corners of the insurance agreement to see what is actually stated, not what was allegedly meant. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 544 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). We must consider all of the provisions with reference to the entire contract; no single provision will be controlling. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is unambiguous, and we may not accept parol evidence as to the parties' intent. *Kelley–Coppedge*, 980 S.W.2d at 464. Whether a contract is ambiguous is a question of law. *Id.*

■ In their pleadings the Mokrys did not allege "personal injury" or "advertising injury" as defined in the CGL Policy. Under the unambiguous language of the Exclusion, there is no coverage under the CGL Policy for physical injury to tangible property or for bodily injury if the physical injury or bodily injury first occurred or began before August 1, 1999—the effective date of the CGL Policy. TIG asserts that the Exclusion unambiguously states that there is no coverage if any process leading to the ultimate damage claimed began before the effective date. TIG cites no cases supporting this interpretation of the above-cited policy language and, under the applicable rules of contract construction, we can not embrace that argument. Contrary to TIG's assertion, the Exclusion is not based on the beginning of the process leading to the ultimate injury or damage; rather, the Exclusion is based on the beginning of the actual injury or damage.

■ Williams asserts that the Exclusion does not apply to the alleged property damage or bodily injury in question unless, before the effective date, Williams became aware of the physical injury to tangible property or bodily injury. However, Williams does not cite any cases in which any court interprets policy language stating there is no coverage for injury that has occurred or begun before the effective date of the insurance policy. Though Williams cites cases interpreting the definition of "occurrence" or the policy requirement of an injury or damage that "occurs during the policy period," the insurance policies at issue in those cases did not contain language similar to the language of the Exclusion. *See, e.g., Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 257–58 (Tex. App.-Dallas 1993, no writ) (dealing with the definition of "occurrence" and stating that there is no coverage unless an identifiable damage or injury, beyond merely causative negligence, occurs during the policy period); *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 381–83 (Tex.App.-Dallas 1987, no writ) (deciding whether there was an "occurrence" under the policy and stating that there is an occurrence if property damage manifests itself or becomes apparent). Williams relies on the line of cases in which courts, adopting a "manifestation rule," have concluded that damage occurs when it manifests itself or becomes apparent; however, none of these cases involved insurance policies that excluded coverage for injury or damage which began before the effective date of the policy. The cases that Williams cites are not on point.[2] The CGL

---

**2.** If the CGL Policy did not contain the Exclusion, then these cases might be on point. However, if this were the case, we still would reject Williams's argument based on this court's decision in *Pine Oak Builders, Inc. v. Great American Lloyds Ins. Co.,* —— S.W.3d

Policy excludes coverage as to injury or damage that first began before the policy's effective date (August 1, 1999). To hold that this exclusion does not apply to injury or damage that has begun but has not manifested itself or become apparent would be contrary to the plain meaning of the Exclusion.

We conclude, under the unambiguous language of the CGL Policy, that there is no coverage for alleged property damage or bodily injury that first occurred or began before the effective date of the CGL Policy. However, if the alleged property damage or bodily injury did not occur or begin before the effective date but the alleged process leading to the ultimate injury or damage began before that date, coverage is not excluded for this reason.

**C. Did the trial court err in concluding that, as a matter of law, the insurer does not have a duty to indemnify the insured based on the Exclusion?**

 Williams asserts that the trial court erred in impliedly ruling that, based on the Exclusion, as a matter of law, TIG has no duty to indemnify Williams against the Mokrys' claims. To prove this traditional summary-judgment ground, TIG relied on two letters from engineer Jim D. Wiethorn. However, these letters do not address when the Mokrys' alleged property damage or bodily injury first occurred or began. The specific language from the letters on which TIG relies is Wiethorn's statement that, in his opinion, "some de-gree of mold growth began at least within the first two years following occupancy and has continued until the time the [vapor] barrier was removed." In response to TIG's motion for summary judgment, Williams attached excerpts from Wiethorn's deposition, in which Wiethorn testifies as follows:

- He is not a microbiologist, and he could not identify mold if he saw it.
- He does not know when condensation formed in the wall of the Mokrys' home as a result of the presence and location of the vapor barrier.
- He does not know when mold first appeared in the wall cavity of the Mokry's home.

Even presuming that there was some degree of mold growth beginning within the first two years of occupancy and continuing until the vapor barrier was removed, the summary-judgment evidence does not address when the Mokrys' alleged property damage or bodily injury first occurred or began. Evidence that some mold grew in the first two years of occupancy does not prove that the mold caused property damage or bodily injury in the first two years of occupancy. The summary-judgment evidence did not conclusively prove that the Mokrys' alleged property damage or bodily injury first occurred or began before August 1, 1999. Therefore, the trial court erred in granting TIG's motion for summary judgment as to TIG's duty to indemnify.[3] *See Roman*

---

——, ——, No. 14-05-00487-CV, 2006 WL 1892669 at *6-8 (Tex.App.-Houston [14th Dist.] July 6, 2006, pet. filed) (rejecting the "manifestation rule" and adopting "exposure rule" as to CGL policies with substantially the same language as TIG's CGL Policy, except that these policies did not contain the language in the Exclusion).

**3.** In its motion for summary judgment, TIG asserted that Williams had offered no evi-dence that the alleged damaging process did not begin at the Mokry residence before the CGL Policy first took effect. Presuming, without deciding, that this would otherwise constitute a valid no-evidence summary-judgment ground, the trial court still erred in impliedly granting summary judgment on this basis. As discussed above, under the Exclusion, if the alleged property damage or bodily injury did not occur or begin before August 1,1999, but the alleged process leading to the ultimate

*Catholic Diocese of Dallas v. Interstate Fire & Cas. Co.,* 133 S.W.3d 887, 897 (Tex. App.-Dallas 2004, pet. denied) (holding trial court erred in granting insurer's motion for summary judgment because insurer did not negate duty to indemnify as a matter of law).

### D. Did either party prove as a matter of law whether the CGL Policy was "delivered or issued for delivery" in Texas?

In the trial court and on appeal, Williams has asserted that TIG cannot rely on the Exclusion because it is an endorsement on a form not approved by the Texas Insurance Commissioner. Williams relies on the following statute for this argument:

> An insurance policy or printed endorsement form for use in writing the types of insurance subject to this article may not be **delivered or issued for delivery in this state** unless the form has been filed with and approved by the commissioner.

Texas Ins. Code Ann. art. 5.13–2 § 8(a) (emphasis added), *repealed by* Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 18(d), 2005 Tex. Gen. Laws 1752, 2187. In its motion for summary judgment, Williams asserted that this statute applies because the declarations page of the CGL Policy states: "Issued by the insurance company indicated: TIG Insurance Company, Administrative Office, Irving, Texas 75039."

TIG does not assert that the Texas Insurance Commissioner approved the endorsement containing the Exclusion; rather, in its motion for summary judgment, TIG asserted that this statute does not apply as a matter of law because the CGL Policy was not "delivered or issued for delivery" in Texas. TIG relied on the following summary-judgment evidence:

injury or damage began before that date, cov-

- the declarations page of the CGL Policy which lists "BSI Holdings, Inc." as the named insured, with an address in Carmel, California.
- evidence showing that the producer or agent who placed the CGL Policy is located in Pasadena, California.
- a letter showing that, on February 27, 2002, this same agent in Pasadena, California mailed a copy of the CGL Policy to a claims management company.

Neither party has cited, nor has this court found, any Texas cases construing the "delivered or issued for delivery in this state" language in this statute or in any other statute. The interpretation of this statutory language appears to be an issue of first impression in Texas. We conclude that it applies only to insurance policies or endorsement forms that are delivered in Texas or issued for delivery in Texas. *See McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 120 F.3d 583, 586–87 (5th Cir.1997) (interpreting same language in Louisiana insurance statute); *Cook v. Herring,* 521 So.2d 807, 809–10 (La.Ct.App.1988) (interpreting substantially similar language in Louisiana insurance statute). Williams appears to argue that, if TIG issued the CGL Policy in Texas, then the policy is subject to this statute. This notion is incorrect under the unambiguous language of the statute. The statute applies only if TIG delivered the CGL Policy in Texas or if TIG issued the CGL Policy for delivery in Texas. Even presuming that Williams proved TIG issued the CGL Policy in Texas, that does not prove that TIG delivered the CGL Policy in Texas or issued it for delivery in Texas. In addition, though the evidence cited by TIG might suggest that the CGL Policy was delivered in California, it does not prove as a matter of law that the CGL

erage is not excluded.

Policy was delivered in California or issued for delivery in California. The agent's mailing of a copy of the policy to a third party in 2002 does not prove the state in which the CGL Policy was delivered in 1999. After reviewing the summary-judgment evidence under the applicable standard of review, we come to the twofold conclusion that Williams did not prove as a matter of law that this statute applies to the CGL Policy and that TIG did not prove as a matter of law that the statute does not apply. Therefore, the trial court did not err in denying Williams's motion for summary judgement as to this statute but did err to the extent it granted its summary judgment based on the ground that the statute is inapplicable as a matter of law.[4]

### E. Did the trial court err in denying the insured's motion for summary judgment asserting that the insurer had a duty to indemnify the insured as a matter of law?

Williams sought summary judgment that TIG has a duty to indemnify against the Mokrys' claims as a matter of law. Attempting to avoid the effect of the Exclusion, Williams first argued that, even under the Exclusion, the CGL Policy provides coverage as long as the injury or damage does not manifest itself to the insured before the effective date of the policy, and secondly, that the Exclusion is void because TIG did not obtain the approval required by former article 5.13–2,

section 8 of the Texas Insurance Code. The summary-judgment evidence upon which Williams relies for the first argument addresses only when the Mokrys first became aware of the alleged injury or damage. We already have determined that Williams's interpretation of the Exclusion to contain the manifestation rule is incorrect as a matter of law. Further, as stated above, Williams did not prove as a matter of law that former article 5.13–2, section 8 of the Texas Insurance Code applies. Therefore, under the unambiguous language of the CGL Policy and former article 5.13–2, section 8, the trial court did not err in denying Williams's motion for summary judgment as to the duty to indemnify.[5]

### F. Did the insurer have a duty to defend?

▮▮▮▮▮ In its motion for summary judgment, TIG did not assert that it owed no duty to defend; however, it did urge that, for the reasons stated therein, the trial court should grant summary judgment against all of Williams's claims. In its motion, Williams asserted that, as a matter of law, TIG breached its duty to defend Williams against the Mokrys' claims. In analyzing this issue, we look first to the policy and then to the pleading to determine if coverage exists. If a pleading does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its in-

---

**4.** The summary-judgment motions and appellate briefs have not addressed the effect, if any, of the Texas Legislature's repeal of this statute as of April 1, 2007, and we do not address this issue either. *See* Act of May 24, 2005, 79th Leg., R.S., ch. 727, 2005 Tex. Gen. Laws 1752, 2187.

**5.** TIG also stated in its motion for summary judgment that "[Williams] has come forward with no evidence in its [motion for] summary

judgment nor discovery relative to this [the bodily injury] aspect of the [indemnity] claim, if any, so summary judgment is improper relative to any "bodily injury" claims that might be advanced under the policy." This argument, although contained in TIG's cross-motion, is a response to Williams's motion for summary judgment rather than a ground asserted in support of a summary judgment in TIG's favor.

sured. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). We determine TIG's duty to defend based on the Mokrys' allegations and the language of the CGL Policy. *See id.* This standard for determining coverage from the four corners of the pleading and the four corners of the insurance policy is referred to as the "eight corners" rule. *See id.* Applying the eight-corners rule, we give the Mokrys' allegations a liberal interpretation. *See id.* If these allegations do not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if *potentially* there is a case under the Mokrys' pleading within the coverage of the policy. *See id.* In making this determination, we must focus on the Mokrys' factual allegations that show the origin of the alleged damages rather than on the legal theories alleged. *See id.* We will not read facts into the Mokrys' pleading, nor will we look outside of their pleading, or imagine factual scenarios which might trigger coverage.[6] *See id.* at 142.

■■■■ In their pleadings, the Mokrys alleged that the design, construction, and installation of the vapor barrier was not in accordance with the plans and specifications and that this work was not performed in a good and workmanlike manner. As a result, the Mokrys asserted, mold grew in their home causing them illness and destroying some of their possessions. The Mokrys claimed that, as a result of the mold contamination, they were forced to leave their home and to remediate the damage to their dwelling. The Mokrys alleged that they entered into their construction contract on or about June 9, 1991, and took possession of their home on August 29, 1991. In their pleadings, the Mokrys do not specify any other dates. The Mokrys sought recovery against Williams for bodily injury and physical injury to tangible property (which constitutes "property damage" under the CGL Policy), but they did not allege that their property damage or bodily injury first occurred or began before the effective date of the policy (August 1, 1999). Based on the Mokrys' allegations, it is possible that the alleged mold growth did not begin to cause any bodily injury or physical injury to tangible property until after the effective date. After reviewing the Mokrys' claims and the terms of the CGL Policy, we conclude that the Mokrys' allegations do not state facts sufficient to bring the Mokrys' claims clearly within or without coverage. Because potentially the Mokrys' claims were within the coverage of the CGL Policy, we conclude that, as a matter of law, TIG had a duty to defend Williams against the Mokrys' claims. *See Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 839–46 (Tex.App.-Dallas 2004, pet. filed) (concluding insurer had duty to defend and that construing the pleadings liberally in favor of the insured, the court could not conclude that no claims were alleged during the policy period).

## IV. CONCLUSION

Under the plain meaning of the Exclusion, there is no coverage under the CGL Policy as to any alleged property damage or bodily injury that first occurred or began before the effective date of the policy; however, if the alleged property damage or bodily injury did not occur or begin before that date, but the alleged process leading

---

6. No party to this appeal has asserted that any alleged exception to the eight-corners rule applies to this case; therefore, we need not and do not address whether any such exception exists or, if so, whether it applies to this case. *See Collier v. Allstate Cty. Mut. Ins. Co.*, 64 S.W.3d 54, 59 n. 3 (Tex.App.-Fort Worth 2001, no pet.).

to the ultimate injury or damage began before that date, coverage is not excluded for this reason. The trial court erred in granting TIG's motion for summary judgment as to the duty to indemnify, but the trial court did not err in denying Williams's motion for summary judgment as to the duty to indemnify. Neither party proved as a matter of law where the CGL Policy was delivered or where the CGL Policy was intended to be delivered when issued. Therefore, the trial court erred in impliedly ruling that, as a matter of law, former article 5.13–2, section 8 does not apply to the CGL Policy. However, the trial court did not err in denying summary judgment as to Williams's argument that this statute applies as a matter of law.

Even though Williams has suffered no damages as a result of any breach by TIG of its duty to defend Williams against the Mokrys' claims, this issue is not moot because Williams is appealing the trial court's denial of its request for Chapter 37 attorney's fees. Under the eight-corners rule, TIG had a duty to defend Williams against the Mokrys' claims. Because the trial court erred in granting summary judgment as to duty-to-indemnify issues, it also erred in granting summary judgment as to Williams's request for attorney's fees on the ground that Williams's indemnity claim fails as a matter of law. However, the trial court did not err in denying Williams's motion for summary judgment seeking attorney's fees as a matter of law. On remand, the trial court can assess Williams's request for attorney's fees under Chapters 37 and 38 after Williams's claims regarding the duty to indemnify are resolved. Accordingly, we reverse the trial court's denial of Williams's motion for summary judgment as to the duty to defend, affirm the trial court's denial of the remainder of that summary-judgment mo-

tion, reverse the trial court's order granting TIG's motion for summary judgment, and remand for further proceedings consistent with this opinion.