**Affirmed and Opinion filed August 3, 2017.**



In The

# Fourteenth Court of Appeals

### NO. 14-16-00154-CV

### TIFFANY FALKENHAGEN THOMPSON, Appellant

### V.

### GEICO INSURANCE AGENCY, INC. D/B/A GEICO SECURE INSURANCE COMPANY, Appellee

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-23904**

## O P I N I O N

In this first-party insurance case we determine the scope of a Texas Personal Auto Policy provision requiring the policyholder to notify the insurer of the policyholder's acquisition of a replacement vehicle for coverage to extend to damage to the newly acquired vehicle. Presented with cross-motions for summary judgment on the meaning of the notification requirement, the trial court ruled for the insurance company and against the policyholder. Challenging that ruling in this appeal, the policyholder argues that the policy's replacement-vehicle notification requirement does not apply to leased vehicles or, alternatively, that the policy language is

ambiguous on the point and so should be construed in the policyholder's favor. Concluding that the replacement-vehicle notification provision unambiguously applies to leased vehicles, we affirm.

## I. BACKGROUND

Appellant Tiffany Falkenhagen Thompson owned a 2011 Infiniti G37 automobile and secured insurance for it from appellee Geico Insurance Agency, Inc. d/b/a Geico Secure Insurance Company ("GEICO"). Thompson traded in her G37 and leased a 2015 Infiniti Q50 automobile but did not notify GEICO that she had acquired the Q50. A few months later, while driving the Q50, Thompson was involved in an automobile accident.

### Presentment and Denial of Claim

Thompson filed a claim with GEICO the day of the accident. The filing of the claim marked the first occasion Thompson notified GEICO that she had acquired the Q50. GEICO denied the claim because Thompson did not notify GEICO within thirty days of acquiring the new vehicle, citing to a replacement-vehicle notification provision in the policy as support for its denial of the claim.

### Policyholder's Suit

Thompson sued GEICO, alleging breach of contract, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act, and violations of the Texas Insurance Code. Thompson also sought a declaratory judgment that the policy covers her Q50.

### Insurer's Motion for Summary Judgment

GEICO filed a traditional motion for summary judgment, asserting that the policy did not cover the Q50 because Thompson did not notify GEICO that she had acquired the new vehicle within thirty days after leasing it. GEICO argued that

2

because Thompson failed to comply with the notification provision, GEICO was not liable for any damages.

*Policyholder's Motion for Summary Judgment*

Thompson filed a cross-motion for partial summary judgment, arguing that (1) the policy covers the Q50 because the policy does not require her to notify GEICO that she had acquired the leased vehicle within thirty days of leasing it; and (2) alternatively, the policy's language on that point is ambiguous and so should be construed in her favor.

*Trial Court's Judgment*

The trial court granted GEICO's motion for summary judgment, denied Thompson's cross-motion for partial summary judgment, and signed a final judgment in GEICO's favor. Thompson timely appealed the judgment.

## II. ISSUE PRESENTED

In her sole issue on appeal, Thompson contends that that the trial court erred by granting GEICO's motion for summary judgment and denying her cross-motion for partial summary judgment because the policy covers the Q50.

We review the grant of summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). We consider all the evidence in the light most favorable to the nonmovant, crediting favorable evidence to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack*

*Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

## III. ANALYSIS

To resolve Thompson's issue—whether the insurance policy covers the Q50—we must interpret the policy. Texas courts generally interpret insurance policies under the same rules of construction that apply to other contracts, reading all parts of an insurance policy together and viewing the policy in its entirety to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex. 1998). Applying the ordinary rules of contract construction to insurance policies, we ascertain the parties' intent by looking to only the four corners of the policy to see what the policy states without considering what the parties allegedly meant. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006); *Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We seek to give effect to all of the policy's provisions so that none will be meaningless. *See Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

If we can ascertain only one reasonable meaning of the policy provision, then we will not adjudge the insurance contract ambiguous, and will enforce it as written. *Fiess*, 202 S.W.3d at 746; *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998) (per curiam). But, when we find words prone to more than one reasonable interpretation, we will deem the contract ambiguous. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). A policy is not ambiguous simply because the parties disagree about the policy's meaning.

4

*Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017); *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015). For an ambiguity to exist, both sides' interpretations must be reasonable. *Great Am. Ins. Co.*, 512 S.W.3d at 893. If we determine that only one party's interpretation of the policy is reasonable, then we will find the policy unambiguous and adopt the reasonable interpretation. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (per curiam).

*Relevant Policy Provisions*

The parties direct our attention to the following portions of the policy:

10. **Your covered auto** means:

a. Any vehicle shown in the Declarations;

\* \* \*

d. Any of the following types of vehicles on the date you became the owner or enter into a lease for a term of six months or more during the policy period[:]

1. A **private passenger auto**; . . . .

\* \* \*

This provision 10.d applies only if **you**:

1. Acquire the vehicle during the policy period, and

2. Notify us within 30 days after **you** become the owner.

\* \* \*

If the vehicle **you** acquire replaces the one shown in the Declarations, it will have the same coverage as the vehicle it replaced. **You** must notify us of a replacement vehicle within 30 days only if **you** wish to add or continue Coverage for Damage to Your Auto. Otherwise **you** have up to the end of the policy period to report the acquisition.

The parties do not dispute that the policy can provide coverage to a leased vehicle. They dispute whether the policy's notice requirements apply to Thompson's leased Q50.

Thompson relies on the following text from subsection 10.d and posits that

5

the notice requirement applies only when the insured owns the replacement vehicle, which requires that the insured "[n]ofity us within 30 days after **you** become owner." Thompson contends that the policy did not require her to notify GEICO that she had replaced the G37 with the leased Q50 because the policy draws a distinction between a leased vehicle and an owned vehicle. According to Thompson, subsection 10.d excludes leased vehicles from the requirement that the policyholder notify GEICO that the policyholder replaced the vehicle covered by the policy. Thompson points to the principle of *expressio unius est exclusio alterius*—the Latin phrase meaning the naming of one thing implies the exclusion of another—and argues that by excluding the modifier "leased" from the provision, GEICO intended to exclude leased vehicles from the policy's notice requirement. *See CKB & Assocs., Inc. v. Moore McCormack Petrol., Inc.*, 734 S.W.2d 653, 655 (Tex. 1987). Proper application of this negative-implication canon depends on context. *See Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts*, section 10, 107-111 (Thomson/West 2012 ed.).

GEICO cites the paragraph under subsection 10, which echoes the thirty-day notice requirement, but refers to "a replacement vehicle" without specifying whether that vehicle is owned or leased. Thompson contends that, at the very least, the policy is ambiguous on this point and so the policyholder should prevail. *See Essex Ins. Co. v. Eldridge Land. L.L.C.*, 442 S.W.3d 366, 370 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (stating that the court construes an ambiguous insurance policy strictly against the insurer and liberally in favor of the insured) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)).

GEICO asserts that the term "owned" can include "leased" under the policy and points to cases holding that the term "owner" has no definite legal meaning. *See, e.g.*, *Foust v. Old Am. Cty. Mut. Fire Ins. Co.*, 977 S.W.2d 783, 787 (Tex. App.—

6

Fort Worth 1998, no pet.). A sister court has held that when an automobile-insurance policy does not define "owner," the term may be synonymous with "holder" or "possessor." *Id.* at 788 (citing *Republic Ins. Co. v. Luna*, 539 S.W.2d 69, 70 (Tex. Civ. App.—Beaumont 1975, writ ref'd n.r.e.)). According to the sister court, "owner" includes one who (1) holds the legal title of a vehicle, (2) has the legal right of possession of a vehicle, or (3) has the legal right of control of a vehicle. *Id.*; *see also* Tex. Transp. Code Ann. § 502.001(31) (West Supp. 2016). Thompson, as "lessor" of the Q50 has the legal right to possess and control the Q50, so precedent from our sister court suggests she may be considered the "owner" for purposes of the policy. *Cf. Foust*, 977 S.W.2d at 788 (interpreting policy with identical clause as subsection 10.d and stating that "[a] party acquires equitable title and thereby becomes owner of the vehicle within the meaning of an insurance policy on the day the sales contract is executed and possession is delivered").

But, Thompson takes the position that she "is not required to notify GEICO if she leases a vehicle." GEICO counters that the parties intended to insure identifiable items, whether leased or owned. Under Thompson's proffered interpretation of the policy, the policyholder would not have to identify a leased vehicle for it to be insured. Thompson roots her position in the premise that for the purpose of insuring a vehicle, leasing is substantively different from purchasing. Leasing[1] a vehicle resembles purchasing a vehicle under an installment contract[2] in that neither the lessee nor the buyer receives legal title when taking possession. *See id.* at 787

---

[1] *See Lease*, Black's Law Dictionary (6th ed. 1990) (defining lease, with regard to tangible personal property, as "a contract by which one owning such property grants to another the right to possess, use and enjoy it for specified period of time in exchange for periodic payment of a stipulated price, referred to as rent").

[2] *See Installment Sale*, Black's Law Dictionary (2d pocket ed. 2001) (defining installment sale as "[a] conditional sale in which the buyer makes a down payment followed by periodic payments and the seller retains title or a security interest until all payments have been received").

7

(stating that it is not necessary to hold legal title to have an insurable interest in property).

We find unreasonable Thompson's proffered interpretation—that the policy does not require the insured who leases a vehicle to comply with the policy's notice requirements to extend coverage to that vehicle. *See RSI Int'l, Inc. v. CTC Transp., Inc.*, 291 S.W.3d 104, 109 (Tex. App.—Fort Worth 2009, no pet. (holding the insured's interpretation of policy was unreasonable and the policy was not ambiguous as a matter of law). The policy requires the policyholder to satisfy the notification requirement for the acquisition of a replacement vehicle—leased or purchased—for coverage to extend to damage to the newly acquired vehicle. We discern no other reasonable interpretation of the operative policy provisions, so we do not find the policy ambiguous.

Thompson further asserts that GEICO cannot point to any term of the policy that excludes the Q50 from coverage. But, the absence of an exclusion cannot confer coverage. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154,160 (Tex. 2003).

## IV. CONCLUSION

We conclude that the policy unambiguously required Thompson to notify GEICO of the replacement of her G37 with the Q50. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014) (stating that the interpretation of an unambiguous contract is a question of law). The trial court properly granted GEICO's motion for summary judgment. Therefore, we overrule Thompson's only appellate issue and affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Donovan and Wise.