

NUMBER 13-07-00744-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**MELODY YARBROUGH,**                                      **Appellant,**

**v.**

**TEXAS A&M UNIVERSITY - KINGSVILLE,**              **Appellee.**

**On appeal from the 105th District Court
of Kleberg County, Texas.**

## O P I N I O N

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Opinion by Justice Rodriguez**

This appeal arises from a lawsuit filed by a professor seeking a declaration that her university employer prevented her from exercising her right to file a grievance regarding a negative employment evaluation. Appellant Melody Yarbrough challenges the trial court's order denying her motion for summary judgment and granting summary judgment

in favor of appellee Texas A&M University - Kingsville (TAMUK or the university). By three issues, Yarbrough complains that the trial court erred in determining, as a matter of law, that TAMUK had allowed Yarbrough to present her grievance to someone in a position of authority as required by the government code. *See* TEX. GOV'T CODE ANN. § 617.005 (Vernon 2004). We reverse and render in part and reverse and remand in part.

## I. BACKGROUND

Yarbrough is employed by TAMUK as an associate professor in the college of education. In May 2003, Yarbrough's supervisor, Mike Daniel, presented her with her annual evaluation, which covered the 2002 calendar year. Yarbrough's evaluation contained high marks in its numerical rankings portion of the evaluation but listed several areas needing improvement in the narrative portion. Yarbrough protested the negative comments in the narrative portion and asked Daniel to reconsider and change her evaluation. Daniel refused but informed Yarbrough that she was free to write a letter contesting the negative comments and that the letter would be placed in her file along with her evaluation. Although Yarbrough sent a letter to Daniel in July 2003 again asking him to rewrite the narrative portion of her evaluation, Yarbrough did not write a rebuttal letter.

In the week following her evaluation, Yarbrough approached Fred Litton, dean of the school of education, regarding her evaluation. She presented Litton with a memo stating her desire to appeal her evaluation. Like Daniel, Litton informed Yarbrough she could write a letter to her file rebutting the negative evaluation. Litton also advised Yarbrough to contact Dalton Bigbee, associate vice president for academic affairs, about her complaint. Yarbrough met with Bigbee the same day. As had Daniel and Litton before him, Bigbee told Yarbrough she could write a rebuttal letter for her file. Bigbee also informed Yarbrough

2

that the faculty handbook allowed her to present her complaint to the faculty grievance committee.

Yarbrough commenced her appeal to the grievance committee in September 2003, and the committee set Yarbrough's appeal for hearing on November 19, 2003. However, in early November 2003, Kay Clayton, provost and vice president for academic affairs, sent a letter to the grievance committee informing them that they were without authority to hear Yarbrough's appeal of her negative evaluation. As a result of the letter, the committee cancelled the hearing. Yarbrough was granted tenure in the spring of 2004.

In April 2005, Yarbrough filed a lawsuit under chapter 37 of the civil practice and remedies code, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001-.011 (Vernon 2008), seeking a declaration that TAMUK violated government code section 617.005 by failing to afford her "a minimally adequate opportunity to present her grievance . . . ." *See* TEX. GOV'T CODE ANN. § 617.005 (stating that the code provision regarding collective bargaining for state employees "does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work"). Both Yarbrough and TAMUK filed motions for summary judgment. The trial court entered judgment denying Yarbrough's motion, granting TAMUK's, and ordering that Yarbrough take nothing by her lawsuit.[1] This appeal ensued.

## II. STANDARD OF REVIEW

Although a party generally cannot appeal the denial of a motion for summary judgment, when both sides move for summary judgment and the trial court grants one

---

[1] The trial court did not specify the grounds on which it granted TAMUK's motion for summary judgment.

3

motion and denies the other, the unsuccessful party may appeal both the granting of the prevailing party's motion and the denial of its own. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). "In a motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact" and must establish that it is "entitled to judgment as a matter of law." *Corpus Christi Indep. Sch. Dist. v. Padilla*, 709 S.W.2d 700, 708 (Tex. App.–Corpus Christi 1986, no writ). The appellate court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). "When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *Id.* (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

## III. DISCUSSION

By her first and second issues, Yarbrough complains that the trial court erred in granting summary judgment in favor of TAMUK on her claim for declaratory relief.[2] Specifically, Yarbrough argues TAMUK did not conclusively prove that her claim was moot or that she was able to present her grievance to a person in authority, thus complying with section 617.005. In her third issue, Yarbrough contends that the trial court erred in denying her motion for summary judgment, arguing that she conclusively proved the inverse of TAMUK's grounds.

---

[2] Because the same law applies to Yarbrough's first and second issues, we will analyze them together for purpose of this appeal. *See* TEX. R. APP. P. 47.1.

4

**A. TAMUK's Motion for Summary Judgment**

TAMUK moved for summary judgment on two grounds. First, TAMUK argued that Yarbrough's claims for declaratory relief were moot because she was granted tenure in spring 2004. Second, TAMUK contended that it complied with section 617.005 because it did not prevent Yarbrough from accessing persons in positions of authority to present her grievance.

**1. Mootness**

TAMUK contends that Yarbrough's primary concern regarding her negative evaluation was the impact it would have on her chances of achieving tenure. TAMUK argues that because Yarbrough was granted tenure before the filing of this lawsuit, her claims for declaratory relief regarding her grievance rights are moot. We disagree.

It is true that "a declaratory judgment is unavailable unless there is a justiciable controversy between the parties." *Lubbock Prof'l Firefighters v. City of Lubbock*, 742 S.W.2d 413, 419 (Tex. App.–Amarillo 1987, writ ref'd n.r.e.); *see Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2004) (holding that "a case becomes moot if a controversy ceases to exist" between the parties). However, in her response to TAMUK's motion for summary judgment, Yarbrough asserted that there still exists an actual controversy between her and TAMUK; Yarbrough argued that, because the policies underlying her dispute with TAMUK are still in effect, her right to present her grievances continues to be violated and could be repeated the next time she has a grievance. Unless the conduct challenged by an appellant has been discontinued and "there is no reasonable expectation that the wrong will be repeated," the case is not moot. *See Lubbock Prof'l*

5

*Firefighters*, 742 S.W.2d at 419 (citing *U.S. v. W.T. Grant & Co.*, 345 U.S. 629, 633 (1953)). TAMUK does not dispute that it continues to support the policies challenged by Yarbrough. Moreover, TAMUK adamantly insists that its actions regarding Yarbrough's grievance complied with the law—in particular, that Yarbrough's meeting with Bigbee, despite his inability to remedy her complaint, gave her access to a person in authority and that TAMUK's rebuttal letter "exclusive remedy" satisfied its obligations under section 617.005. *See id.* (finding that the wrong was likely to be repeated, especially in light of the appellee's "vigorous trial and appellate opposition" to the claims of appellants). Based on the foregoing, we note that TAMUK has taken no steps to discontinue the complained-of policies, conclude that a repetition of events in this case is likely and, therefore, reject TAMUK's mootness argument because an actual controversy still exists between the parties. *See Hallman*, 159 S.W.3d at 642. Thus, we cannot conclude that this ground supports the summary judgment entered in favor of TAMUK.

### 2. Compliance with TEXAS GOVERNMENT CODE § 617.005

In addition to mootness, TAMUK moved for summary judgment on the ground that its actions with regard to Yarbrough's complaint complied with section 617.005. Following are the undisputed material facts of this case: Yarbrough received a negative evaluation from her supervisor, Daniel, in May 2003; Yarbrough disagreed with Daniel's assessment of her performance; Yarbrough asked Daniel to change the negative narrative portion of the evaluation to match the positive numerical ranking portion of the evaluation; the "exclusive remedy" for TAMUK faculty contesting negative evaluations is writing a rebuttal letter to be placed in the professor's file; Yarbrough did not avail herself of this remedy;

6

instead, Yarbrough pursued her complaint up the "chain of command" at TAMUK, meeting first with Litton and then Bigbee; neither Litton nor Bigbee had the power to change Yarbrough's evaluation; only Daniel had the power to change Yarbrough's evaluation; Yarbrough appealed her negative evaluation to the faculty grievance committee in September 2003; the grievance committee set Yarbrough's appeal for a hearing; in November 2003, TAMUK's provost informed the committee that it had no authority to hear Yarbrough's appeal and no hearing was held.

Because the facts are undisputed, the question before us—whether TAMUK's actions with regard to Yarbrough's grievance, as a matter of law, complied with section 617.005 of the government code—is a legal one. *See Padilla*, 709 S.W.2d at 708. Section 617.005 states that chapter 617 of the government code, which prohibits public employees from striking or engaging in collective bargaining, "does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike." TEX. GOV'T CODE ANN. § 617.005.

At the outset, we note that the case law and other authority interpreting this question is sparse. In *Corpus Christi Independent School District* (CCISD) *v. Padilla*, this Court addressed a similar, although not identical, situation. 709 S.W.2d 700. Two employees complained that CCISD had deprived them of their grievance rights as public employees by denying their request for a hearing before the board of trustees. *Id.* at 703. The employees had each received work reassignments and initiated grievances under a board policy that created three categories of grievances. *Id.* Under the policy, all grievances must have gone through the first category, Type A, which was an informal process handled

7

by private conference with the involved parties. *Id.* After this initial process, grievances could be further pursued as either a Type B grievance—which involved a written statement that there had been a violation of policies or regulations—or a Type C grievance—which involved a written complaint regarding wages, hours, and conditions of work that was heard and determined by the CCISD superintendent. *Id.* Only Type B grievances could be appealed to the board of trustees. *Id.*

One of the complaining employees filed a Type B grievance, but the superintendent determined that the grievance fell in the Type C category so both employees then filed Type C grievances. *Id.* The superintendent met with both employees, heard their complaints, and denied both grievances. *Id.* The employees appealed the superintendent's denial to the board of trustees, but the board denied their request for a hearing. *Id.* At its regular meeting, the board set aside time for an open forum at which any person could address the board about any matter. *Id.* The employees did not approach the board during the open forum to complain of their grievances. *Id.*

In *Padilla*, we held that the government code "ensure[s] only that public employees have access to those in a position of authority to air their grievances," and the law was satisfied by the board of trustee's open forum at regular board meetings. *Id.* at 707; *see* TEX. GOV'T CODE ANN. 617.005; *see also* Op. Tex. Att'y Gen. No. H-422, at 2 (1974) (reasoning that a public employee's right to present his grievances, "given as an alternative to collective bargaining, is of little value if public employers are entitled to refuse to hear or discuss grievances"). We also held that, because the superintendent was empowered

by the board to remedy employee grievances, the Type C procedure initiated by the complaining employees also complied with the law. *Padilla*, 709 S.W.2d at 707.

TAMUK interprets *Padilla* to stand for the proposition that, under section 617.005, a public employer need only provide a forum for the airing of employee grievances. TAMUK does not believe it is required to provide employees with access to persons who can actually *remedy* the problem complained of in the grievance. Following this logic, TAMUK argues that the open forum provided by the CCISD board of trustees in *Padilla* is analogous to TAMUK's open-door policy; TAMUK contends this policy allows employees to air their grievances to any member of the university's administration, including the president. TAMUK asserts that, by failing to pursue her complaint past Bigbee and the faculty grievance committee, Yarbrough did not fully avail herself of the university's open-door policy, and thus, TAMUK did not deny her access to persons in positions of authority as required by section 617.005. TAMUK further argues that Yarbrough's meeting with Bigbee, in itself, satisfied the university's obligation; TAMUK contends that, despite the undisputed fact that Bigbee did not have the power to alter Yarbrough's negative evaluation, Bigbee was nonetheless a person in a position of authority. *See id*.

However, TAMUK's argument ignores two critical uncontested facts: (1) the university's "exclusive remedy" for employees complaining of negative evaluations is to write a rebuttal letter to be placed in their files; and (2) Daniel, the supervisor who drafted the negative comments in the narrative portion of Yarbrough's evaluation, was the only person at the university empowered to change Yarbrough's evaluation. We do not believe that the open forum provided by the CCISD board of trustees in *Padilla*—through which

9

aggrieved employees could present their complaints to a body that was empowered to take action to remedy the problem—is sufficiently analogous to warrant our endorsement of TAMUK's open-door policy, which, by the university's own admission, does not provide employees access to persons who can fix the underlying cause of their grievances. Moreover, we refuse to extend our holding in *Padilla* to the facts of this case because the complaining employees in *Padilla* had direct access to a person "in a position of authority *able to remedy*" their grievance, the superintendent. *Id*. (emphasis added). Here, TAMUK's argument relies heavily on Yarbrough's access to two particular persons, Bigbee and Daniel. The first, Bigbee, had no power to rectify the situation giving rise to Yarbrough's grievance. The other, Daniel, was the very person who wrote the negative evaluation about which Yarbrough was complaining; surely, a public employer's obligations under section 617.005 are not satisfied by a policy that vests sole discretion to remedy grievances in the hands of the supervisor who created the underlying situation giving rise to the complaint.[3] We will not limit a public employer's duty under section 617.005 to merely providing a sounding board for employee venting; to do so without also requiring that the person in authority be able to remedy the complaint would render an employee's grievance rights meaningless. *See* Op. Tex. Att'y Gen. No. H-422, at 2.

---

[3] *See*, *e.g.*, TEX. EDUC. CODE ANN. § 11.171(a) (Westlaw current through 2009 1st C.S.) (stating that public school teachers must be able to take their grievances of harassment or other violations of law to a "supervisor other than the supervisor against whom the employee intends to report the grievance"); Univ. of Tex. Sys. Rules & Regulations of the Bd. of Regents, Rule 30602 §§ 5-8, http://dox.utdallas.edu/policy1187 (last visited Aug. 27, 2009) (providing for the appeal of unsatisfactory decisions of direct supervisors to other persons empowered to make a decision on the matter); McLennan Community College Employee Grievance Procedure, http://www.mclennan.edu/publications/phandbook/docs/b-17.pdf (last visited Aug. 27, 2009) (same).

Accordingly, we conclude that a public employer complies with section 617.005 so long as it allows its employees to access persons in positions of authority to present their grievances. *See id.* ("Having the right to present grievances necessarily implies that someone in a position of authority is required to hear them . . . ."). However, it is not enough that the approached person have a generally authoritative title—such as associate vice president for academic affairs. Rather, the person to whom the employee grieves must have the authority to actually correct the complained-of wrong. By our decision today we do not conclude that the person to whom the grievance is presented is under any sort of legal compulsion to take action. *See id.* Neither are we mandating that, as was requested by the employees in *Padilla*, public employers hold hearings for every grievance brought before them. *See Padilla*, 709 S.W.2d at 707 (agreeing that a requirement that the board of trustees hold an evidentiary hearing for every employee complaint would place an "overwhelming burden" on the board). We merely conclude that the person hearing the employee's grievance must have the power to remedy the complaint if it is ultimately determined that is the correct course of action. Based on the foregoing, we cannot conclude that TAMUK's actions with regard to Yarbrough's grievance complied with section 617.005, and thus, its actions cannot provide a basis for granting TAMUK's motion for summary judgment.

### 3. Conclusion

Having rejected both grounds on which TAMUK moved for summary judgment, we conclude the trial court erred in granting summary judgment in favor of TAMUK. *See Doe*, 915 S.W.2d at 473 (holding that reversal of a granted motion for summary judgment

11

requires proof that none of the movant's grounds were meritorious). We sustain Yarbrough's first and second issues.

## B. Yarbrough's Motion for Summary Judgment

Yarbrough moved for summary judgment on the ground that TAMUK denied her access to a person in a position of authority who could remedy her grievance regarding her negative evaluation. As previously discussed, the material facts of this case are undisputed, and we interpret the law to require that a public employer allow potentially wronged employees to present their complaints to a person in a position of authority who is able to remedy the grievance. *See Padilla*, 709 S.W.2d at 707. Here, the uncontested facts establish that, although Yarbrough attempted to appeal her evaluation up the chain of command to Bigbee, Bigbee did not have the authority to direct Daniel to change her evaluation or change her evaluation himself. Rather, the evidence shows that Daniel was the only person at TAMUK vested with the power to change Yarbrough's evaluation and that Yarbrough's "exclusive remedy" was to write a letter to her file rebutting Daniel's negative narrative in her evaluation.

We conclude that by creating an "exclusive remedy" that put Yarbrough's grievance squarely back into the hands of the person who wrote her complained-of evaluation, TAMUK, as a matter of law, failed to comply with section 617.005. Its actions impaired Yarbrough's right to present her grievance to a person with the authority to remedy her complaint. Therefore, the trial court erred when it denied Yarbrough's motion for summary judgment. Yarbrough's motion should have been granted because the evidence conclusively established that neither her meeting with Bigbee nor the "exclusive remedy" of writing a rebuttal letter satisfied TAMUK's obligation to provide Yarbrough with access

12

to a person in authority who could remedy her grievance. *See FM Props. Operating Co.*, 22 S.W.3d at 872 (directing this Court to consider the summary judgment evidence, determine the questions presented, and render the judgment that should have been rendered by the trial court). Yarbrough's third issue is sustained.

## IV. CONCLUSION

The judgment of the trial court granting TAMUK's motion for summary judgment and denying Yarbrough's is reversed. We render judgment granting Yarbrough's motion for summary judgment and enter the following requested declaratory relief:[4] that Texas A&M University, Kingsville impaired Yarbrough's right to present her grievance under section 617.005 of the Texas Government Code by offering Yarbrough the "exclusive remedy" of rebutting her evaluation to the very supervisor who crafted the negative narrative in the first place; this policy denied Yarbrough access to a person in a position of authority who could remedy her grievance and, thus, deprived her of her statutory rights under section 617.005. *See* TEX. GOV'T CODE ANN. § 617.005. We remand the case to the trial court for entry of attorneys' fees and costs pursuant to the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed this
24th day of September, 2009.

---

[4] *See Lubbock Prof'l Firefighters v. City of Lubbock*, 742 S.W.2d 413, 419-20 (Tex. App.–Amarillo 1987, writ ref'd n.r.e) (reversing the trial court's denial of and rendering the declaratory relief requested by appellants).