# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00395-CV

**Employees Retirement System of Texas, Appellant**

**v.**

**M. P., Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-12-003851, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellee M.P. sued the Employees Retirement System of Texas (ERS) for judicial review of an agency order dismissing as moot M.P.'s administrative proceeding. The trial court reversed the agency's dismissal order and remanded the case, with restrictions, to ERS. ERS perfected this appeal. We will modify the trial court's judgment and affirm it as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

M.P. seeks reimbursement of out-of-pocket expenses she incurred to obtain medical treatment that ERS determined was experimental or investigational and thus excluded from coverage under the state's HealthSelect health-insurance plan (the Plan). After an evidentiary hearing confined to the issue of coverage, an administrative law judge (ALJ) determined that the disputed treatment was covered under the Plan and that M.P.'s claim should be paid. Before a final agency decision was made, however, ERS (1) ceased disputing coverage, (2) made a payment to M.P.'s

treating physician that it characterized as "the total maximum amount" payable under the Plan, and (3) moved to dismiss the administrative proceeding as moot on that basis. Instead of ruling on the ALJ's proposal for decision (PFD), ERS's Executive Director (ED) granted ERS's motion and dismissed M.P.'s administrative appeal as moot because "full benefits have been allowed as provided for in [the Plan]." *See* 34 Tex. Admin. Code § 67.43(a)(4), (c) (Employees' Retirement Sys. of Tex., Hearings on Disputed Claims) (grounds for dismissing administrative appeal).

After exhausting her administrative remedies, M.P. sought judicial review of the dismissal order in Travis County district court. M.P. disputed that she had received full benefits, argued that the record lacked sufficient evidence to support the ED's determination of that matter, and complained that the dismissal order failed to comply with statutory and administrative requirements mandating the inclusion of written findings of fact and conclusions of law to support the ED's conclusion that "full benefits" had been paid. The trial court reversed the ED's dismissal order as unsupported by substantial evidence and remanded the case to the agency on the sole issue of the amount of and basis for determining "full benefits" under the Plan. The court ordered that this determination be made on the administrative record from the prior hearing.

On appeal to this Court, ERS asserts that the trial court lacked jurisdiction to consider M.P.'s appeal and, in the alternative, that the court erred in limiting the scope of remand to the record previously established in the contested-case proceeding. We hold that although ERS has conceded the existence of coverage, the issue of the amount of benefits due under the Plan was raised in the agency and remains in dispute; therefore the ED erred in concluding that the administrative proceeding was moot. Accordingly, the trial court did not lack jurisdiction to consider M.P.'s appeal. We also hold, however, that the trial court abused its discretion in limiting the scope of

2

remand to the previously established record. M.P.'s requested issue concerning the amount of benefits due in the event of coverage, having been expressly excluded from the administrative proceeding, has not been litigated by the parties. We will therefore modify the trial court's judgment and affirm it as modified.

## DISCUSSION

M.P.'s doctor recommended that she receive Transcranial Magnetic Stimulation (TMS) treatment for depression. However, Blue Cross Blue Shield of Texas, the then-administrator of M.P.'s health-care plan, deemed the treatment experimental or investigational and denied coverage. In order to receive the recommended treatment, M.P. was required to pay her treating physician $18,000 out of pocket for the procedure before appealing the denial of coverage.

After upholding Blue Cross's denial of coverage, ERS referred M.P.'s administrative appeal to the State Office of Administrative Hearings (SOAH) on the sole issue of the existence of coverage. Subsequently, M.P. requested that the amount of benefits due under the Plan be included as an additional issue in the contested-case proceeding.[1] ERS, however, opposed the inclusion of that issue, asserting among other things that the ALJ lacked jurisdiction to determine the amount of benefits because (1) the ED had not yet made a determination as to the amount of benefits due if coverage were found to exist and (2) the ED "has exclusive authority to determine all questions

---

[1] M.P. made this request by motion and stated the additional issue as follows:

[T]he total amount of damages billed and denied was $18,000.00. Appellant [M.P.] seeks reimbursement of a percentage of this amount based upon In-network benefits provided by Blue Cross in the HealthSelect Plan. In the interest of efficiency and judicial economy, the issue of damages should be decided in this case, if it is reached.

3

relating to . . . payment of a claim arising from group coverages or benefits provided under" the Texas Employees Group Benefits Act.[2] *See* Tex. Ins. Code § 1551.352 (ED "has exclusive authority to determine all questions relating to . . . payment of a claim arising from group coverages or benefits provided under this chapter . . . ."); *see also id.* § 1551.355 (ED's decision as to amount of benefits is appealable to board of trustees but may be referred to SOAH or another hearing examiner and, regardless of hearing examiner, appeal is contested-case proceeding under Chapter 2001 of Government Code); *accord* Tex. Gov't Code § 815.511 (allowing for appeal to board of trustees from ERS decision relating to "the amount of benefits payable," which ED may refer to SOAH or another hearing examiner, and stating that such appeal is contested case under Chapter 2001 of Government Code). Based on the arguments and authorities presented by the parties and an agreement between Blue Cross and ERS "to stipulate to the amount of coverage as evidenced by the provider contract in place for the medical procedure at issue," the ALJ ruled that it lacked jurisdiction "to litigate the issue of the amount of coverage in [the contested-case] proceeding." Accordingly, the ALJ denied M.P.'s request to add the amount-of-benefits issue, and the matter proceeded to an evidentiary hearing exclusively on the issue of coverage. Following that hearing, the ALJ issued a PFD concluding that the TMS treatment M.P. received was neither experimental nor investigational and that her reimbursement claim was incorrectly denied on that basis.

Before the ED took action on the PFD, ERS ceased disputing coverage and Blue Cross made a payment to M.P.'s treating physician. ERS thereafter filed a motion to dismiss

---

[2] Because M.P. phrased the benefit-amount issue as a claim for "damages," ERS also argued that the ALJ lacked jurisdiction because "damages" are not authorized remedies under the pertinent statutes. Regardless of the label M.P. chose, the substance of the requested additional issue pertains to the amount of benefits allowed under the Plan. *See* n.1, *supra*.

4

the administrative appeal as moot on the ground that "full benefits [had] been allowed." ERS asserted that (1) M.P.'s claim had now been processed in accordance with the Plan documents as though the TMS therapy she received was medically necessary; (2) the allowable amount had been paid in accordance with the network-provider contract with M.P.'s treating physician; and (3) M.P. had been offered full reimbursement of her out-of-pocket expenses less her co-pay share. The ED granted the motion to dismiss on the basis that there was no longer a live controversy because M.P. had received full benefits.

ERS attached several unauthenticated and unverified documents to support its motion to dismiss. Those documents include correspondence reflecting that Blue Cross (1) processed the TMS services at the network-level benefits under the Plan; (2) calculated the network benefits as $8,532, of which $1,706.40 was determined to be M.P.'s share; (3) sent a check for $6,825.60 to the provider; and (4) instructed the provider to refund and reimburse M.P. $9,468. The documents further indicate that the provider reimbursed M.P. $6,825.60 and offered to reimburse her another $2,642.40, for a total amount of $9,468, as instructed by Blue Cross. M.P. accepted the first payment but declined the second payment and refused to execute settlement documents after discovering that, on acceptance of the second payment, she would be out of pocket nearly $7,000 more than Blue Cross had determined to be her portion of the network expenses.[3] M.P. has

---

[3] This discrepancy appears to have resulted from a math error by Blue Cross and/or ERS. M.P. paid the provider $18,000 for the TMS services. Instead of reimbursing M.P. for any portion of the expenses she incurred, the documents attached to ERS's motion reveal that Blue Cross sent an additional payment of $6,825.60 *to the provider*, resulting in a total payment of $24,825.60 to the provider for the TMS treatment. Because Blue Cross made the benefit payment directly to the provider, the provider would have needed to reimburse M.P. $16,293.60 for her to have "been offered full reimbursement of her out-of-pocket expenses less the patient share," as alleged in ERS's motion to dismiss. Blue Cross's calculation of $9,468 due as reimbursement from the provider

5

steadfastly denied having "been offered full reimbursement of her out-of-pocket expenses less the patient share," as ERS alleged in the dismissal motion, and that claim appears to be substantiated by the documentation ERS submitted with its motion to dismiss. *See* n.2, *supra*. But the dispute as to the amount of benefits extends beyond whether ERS and Blue Cross did the math properly; based on what M.P. contends is the relevant portion of the Plan's definition of "allowable amount," she also maintains that the full benefit amount is $18,000, not $8,532.[4]

Without regard to whether the ED properly considered the documents ERS submitted with the dismissal motion, there remains a dispute about the total amount of benefits due under the Plan and whether M.P. has received—even under ERS's construction of the Plan—all the benefits provided by the Plan, including plan discounts. Contrary to ERS's claim otherwise, the dispute as to the extent of allowable benefits does not involve a challenge to the Plan's design; the question is how the plan, as designed, applies to the facts of this case. The issue of the amount of benefits was raised in the administrative appeal and, over M.P.'s objection, excluded from the scope of the

---

would have been accurate under its calculation of network benefits only if Blue Cross had made the $6,825.60 payment directly *to M.P.* instead of to the provider. Due to the way the claim was processed and the amount Blue Cross directed the provider to reimburse M.P., she would be out of pocket $8,532, which is greatly in excess of the $1,706.40 Blue Cross determined to be her share.

[4] The precise basis of the plan-interpretation dispute is not germane to the issues in this appeal; the dispositive inquiry here is whether any adjudicable controversy existed or whether the entire dispute had been mooted by subsequent events. Suffice it to say that, under M.P.'s reimbursement theory, her patient share ($3,600) would exceed the amount determined to be her share under ERS's interpretation of the plan ($1,706.40), but due to the manner in which the claim was actually processed, she expects to be reimbursed $14,400, which is significantly more than the $9,468 she has been offered to date. Under her interpretation of the Plan's "allowable amount" definition, the reimbursable amount depends on the charges she actually incurred, not anything specified in the network-provider agreement. Accordingly, she disclaimed a desire to seek reimbursement of plan discounts from the provider.

6

proceeding. Even after ERS acquiesced to coverage, the amount-of-benefits question remained at issue in the case and was not extinguished by Blue Cross's ostensible determination regarding the allowable amount for the TMS treatment M.P. received.

Although the ED "has the exclusive authority to determine all questions relating to . . . payment of a claim arising from group coverages or benefits," the ED does not have the final word. The ED's decision is appealable, a contested-case proceeding is available, and judicial review from a final agency determination is expressly authorized. *See* Tex. Ins. Code § 1551.355 (ED's decision is appealable); Tex. Gov't Code § 815.511 (same); *see also* Tex. Ins. Code §§ 1551.352 (ED has exclusive authority to determine questions relating to payment of claims); .355 (ED's decision is appealable), .359 (aggrieved party is entitled to judicial review of final agency decision); Tex. Gov't Code § 815.511 (allowing for appeal and contested-case proceeding from ERS decision relating to "the amount of benefits payable"). Given the procedural posture and background of this case, a live controversy exists as to the amount of allowable benefits, and there is no indication in the record that such dispute has been finally resolved as contemplated by the governing statutes. Accordingly, the ED erred in dismissing the administrative proceeding as moot on the basis that "full benefits" had been allowed because that portion of the case, having been excluded from the contested-case proceeding by the ALJ, remained (and still remains) unadjudicated. The trial court therefore did not err in remanding that matter to the agency for resolution of the parties' dispute concerning the allowable amount of benefits. However, because that issue was excluded from the proceeding and thus not litigated in the contested-case hearing, the trial court abused its discretion in limiting the scope of remand to the existing administrative record.

7

We further hold, however, that the issue of coverage is no longer in dispute and, as a result, the trial court properly limited remand of the case to the amount-of-benefits issue. By making payment on M.P.'s claim, ERS effectively conceded that the TMS treatment M.P. received is covered under the Plan. *Cf.* Tex. Ins. Code § 1551.358 (parties may informally negotiate award of benefits but such benefits "may not exceed the maximum benefits otherwise available or required by law"). Moreover, ERS represented to the trial court that there was no longer a dispute as to coverage, stating:

> ERS properly and correctly decided to simply capitulate, pay the claim, do exactly as the ALJ suggested in the proposal for decision. Therefore, we went from a contested case to an uncontested case.
>
> . . . .
>
> So, in essence, ERS just agreed not to fight the matter anymore, pay the claims as though they'd been always covered by the plan, agree with what the ALJ said . . . . [I]t's no longer a contested case when we give up.

Likewise, in its appellate brief to this Court, ERS has stated that, by making payment on M.P.'s claim, "ERS ceased to contest this matter and paid the claim without further protest." ERS states that its "position is, and has been, that the question of coverage was moot because . . . it paid the claim as though the treatment was covered and non-excluded." Because coverage is not in dispute, the ED and trial court correctly determined that there is no live controversy as to that part of the case. *See, e.g.*, *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome.").

8

**CONCLUSION**

For the reasons stated, we modify the trial court's judgment by deleting the portion of the judgment limiting the scope of remand to the record previously established. As so modified, we affirm the court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Modified and, as Modified, Affirmed

Filed:   September 17, 2014

9