## STATE ex rel. WALKER et al. v. CITY OF GLADEWATER.

### No. 5647.

Court of Civil Appeals of Texas. Texarkana.

April 11, 1940.

Rehearing Denied April 18, 1940.

Wynne & Wynne, Fred Erisman, Henry H. Harbour, Philip Brin, and Ralph Prince, all of Longview; for appellants.

Hurst, Leak & Burke, of Longview, and Samuel C. Harris and B. M. Land, both of Gladewater, for appellee.

WILLIAMS, Justice.

This is a quo warranto proceeding filed in March 1937 by the State of Texas, acting through the District Attorney of Gregg County, upon the relation of Mrs. E. L. Walker, a feme sole, W. H. York, and Leland Fikes, against the City of Gladewater, a municipal corporation organized under the general laws of the State, herein referred to as the City. The City, purporting to act under the provisions of Articles 965 and 974, R.C.S. of 1925, extended a part of its city limits 800 feet in width, annexing approximately 365 acres. In the map that follows, the solid line shows the boundary of the extended area; the dotted line the former boundary of the City; the x's the residences of the petitioners in the annexed area; and the shaded portion the lands of the relators.

This act of the City in including the lands of relators within the annexed area is challenged by plaintiff and relators as

being arbitrary, illegal and void. The information alleged the land of relators to be swampy, subject to overflow, and wholly unfit for residential or ordinary business purposes; without streets, electric, water or sewerage lines; not within ½ mile of any inhabited part of the city. They alleged that none of relators' land needs or can receive any protection or benefits from the city government; that same is fit only for oil production and is wholly unsuitable for city purposes. They alleged that the city did not intend to use the land for city purposes, but sought to annex it solely for the purpose of collecting taxes on it. The city was charged with instigating the movement and with preparing and causing the petition for annexation to be circulated and signed. Subject to a plea in bar later herein discussed, the city answered with general and special exceptions, and a general and special denial. It pleaded that the provisions of Article 974 had been complied with and joined issue on the allegations that the property of relators was unfit for city purposes or that same had been annexed only for taxation purposes.

This land of relators is situated in the Sabine River bottoms, subject to overflow, in some places 8 to 10 feet deep. It is marshy, boggy, and swampy, filled with sloughs, seeps, ditches, and salt water drains and slush pits incidental to various oil producing wells scattered over the area. The evidence clearly reflects that the same is unfit for habitation. It is to be observed from the above map that not a person residing in the neighborhood of relators' land signed the petition. The petitioners lived on high ground in built-up areas with water and other utility connections and adjacent to state highways. The field notes of the area to be incorporated were surveyed out and prepared by the city engineer, who verified the field notes before a city official. The petition contained these field notes. The same city official took the affidavit of three signers of the petition. On December 23, 1936, at a recess meeting of the City Commission the petition was presented, ordered filed, and the rules of the City requiring ordinances to be read at more than one meeting were suspended and the ordinance was passed annexing this area to the City. Five years prior to the present annexation, the City extended the city limits to include an area on high ground North and Northwest of relators' land. During the five years the City has made no improvements on that area and in nowise utilized the same for city purposes. At the time of the annexation here involved one building was being remodeled but not a single building was under construction in the city. The city levied and collected a tax of $1.75 per $100 valuation and also an occupation tax varying from $25 to $50 per well against each producing oil well within the city limits. Various producing oil wells were situated upon the land of relators within the area sought to be annexed.

In response to special issues submitted, the jury found that the city did not intend to use the land of relators strictly for town purposes; and that their land was not capable of being used for town purposes within a reasonable time. Upon request, the court also filed findings of fact, namely: (1) That the property owned by relators was annexed to the city purely for taxation purposes; (2) that same was unsuitable for city purposes; (3) that the city did not intend to use same for city property within a reasonable time. The city did not in the trial below, nor does it here challenge the sufficiency of the evidence to support each and all of the above findings. Article 974, here applicable, reads: "When a majority of the inhabitants qualified to vote for members of the State legislature of any territory adjoining the limits of any city incorporated under, or accepting the provisions of, this title, to the extent of one-half mile in width, shall vote in favor of becoming a part of said city, any three of them may make affidavit to the fact to be filed before the mayor, who shall certify the same to the city council of said city. The said city council may, by ordinance, receive them as part of said city; from thenceforth the territory so received shall be a part of said city; and the inhabitants thereof shall be entitled to all the rights and privileges of other citizens, and bound by the acts and ordinances made in conformity thereto and passed in pursuance of this title."

The area included in the extension did not exceed ½ mile in width. The evidence supports the court's finding of fact No. 4, "that a petition signed by a majority of the resident and qualified electors living within the territory to be annexed, and verified by the affidavit of three of such electors that the same constituted a majority of the electors residing in said territory and had expressed its desire to be annexed to the City, and that such petition had

been properly presented to the City and an ordinance declaring said property duly annexed to said City had been passed by said City Commission." It was upon this finding No. 4 that the court concluded, as a matter of law, that under the authority of the State v. City of Waxahachie, 81 Tex. 626, 17 S.W. 348, 350, the State and relator were not entitled to recover and entered a judgment non obstante veredicto denying the relief sought. The judgment was so entered upon the theory as expressed in the motion to enter judgment non obstante veredicto—that "the legislature having prescribed a certain limit to which the boundaries of a city may be extended, without expressing any qualification, the right to so extend them results, without regard to the use or character of the occupation of the annexed territory."

The State v. City of Waxahachie, supra, which the city relies upon to support the judgment herein rendered, involved the construction of Article 974 under facts in some respects similar to those here. A vital difference which controls the disposition of the present action is the unchallenged findings of the court and jury, amply supported by the evidence, that the city annexed the lands of relators purely for taxation purposes (not for any other purpose) and the same was incapable of being used for town purposes within a reasonable time.

It is observed that Article 974 contains no express limitation upon the power of the city to annex, except that the area shall not exceed ½ mile. The Court in State ex rel. Taylor v. Eidson, 76 Tex. 302, 13 S.W. 263, 7 L.R.A. 733, and Ewing v. State, 81 Tex. 172, 16 S.W. 872, reviewed with other authorities in State ex rel. Mobray v. Masterson, Tex.Civ.App., 228 S.W. 623, construed Article 1134 and read into that article that no territory was to be included within the incorporation of a municipality except that which is intended to be used for strictly town purposes. What purposes did the Legislature have in granting a city the power to extend its city limits other than to provide additional area for a growing city's needs and city uses? Manifestly the Legislature had no results in mind as here presented, of subjecting to city taxation property unsuitable for town purposes and which would receive no city benefit. As stated in State ex rel. Wilke v. Stein, Tex.Com. App., 36 S.W.2d 698, 699, in the discussion of Article 1134, "Statutes must be reasonably construed, taking into consideration the subject-matter of the law, and the practicable experience of the members of the Legislature enacting it." See also City of West University Place v. Ellis, Tex.Com.App., 134 S.W.2d 1038, and authorities therein discussed; Tod v. City of Houston, Tex.Com.App., 276 S.W. 419, 421.

To subject the properties of a people to the burden of a municipal government which will share none of its benefits is unjust, State v. Eidson, supra, and would result in the imposition of unnecessary burdens and the infliction of great injuries. State v. Stein, supra; Town of Latonia v. Hopkins, 47 S.W. 248; State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007. And as stated in State v. Masterson, supra [228 S.W. 631], "to permit the incorporation [of relators' lands] in this case to stand, as was attempted, would be for us to sanction that which is clearly a legal fraud." Such attempted act was arbitrary, unreasonable and violative of the inhibitions of both State and Federal Constitutions, Const.Tex. Art. 1, § 19; U.S.C.A.Const. Amend. 14, that "a person shall not be deprived of his * * * property without due process of law." City of West University Place v. Ellis, supra; Chicago B. & Q. Rwy. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979.

The city offered in evidence under its plea in bar the original petition and judgment in cause No. 10667-C. which was filed by Mrs. E. L. Walker and W. H. York on December 21, 1936, in which they, as tax-paying citizens residing within the city limits as then constituted, sought a temporary restraining order to be continued as a temporary injunction. That petition alleged that the city was purporting to annex certain lands of theirs by virtue of some kind of petition being circulated at the city's instigation, without affording them notice of the proceedings or an opportunity to protest or to protect their rights. Further allegations set out the nature of their land, and that the City was proceeding in fraud of their rights for the sole purpose of mulcting them in taxes. The judgment, dated December 23, 1936, recites the parties appeared, "and the Court after hearing the pleadings, evidence and argument, is of the opinion that the plaintiffs are not entitled to the relief prayed for but that the same should be in all things

denied." This ordinance was passed the same day this application for temporary injunction was made, the record not disclosing whether prior or subsequent thereto. Such proceedings in cause No. 10667-C did not operate as a bar to this quo warranto proceeding. Plaintiffs had a plain, adequate and speedy remedy at law, that of the present proceedings. Article 6253, R.C.S. of 1925; King's-Estate v. School Trustees, Tex.Civ.App., 33 S.W.2d 783; Kuhn v. City of Yoakum, Tex.Com.App., 6 S.W.2d 91; 24 T.J. 88; 1 C.J.S., Abatement and Revival, page 67, § 41. The subject matter of the two suits are not the same. The first was an attempt to secure a temporary injunction to prevent the City from proceeding to act upon some kind of petition to annex certain territory. The second suit was a quo warranto, with the State as movant, brought after the limits were extended, to declare the act illegal and a usurpation of authority by a municipal corporation. 51 C.J. pp. 309, 323.

The judgment of the trial court is reversed and here rendered, decreeing as invalid and of no force and effect the acts of the City in including the lands of relators within the annexation ordinance of December 23, 1936.