

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00309-CV

---

WATERWAY RANCH, LLC                    APPELLANT

V.

CITY OF ANNETTA, TEXAS                    APPELLEE

----------

## FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

----------

## OPINION

----------

Raising six issues, appellant Waterway Ranch, LLC appeals the trial court's order granting the motion for summary judgment and plea to the jurisdiction filed by appellee City of Annetta, Texas. After the submission of this appeal, appellee filed a motion to dismiss it, contending that it is moot, that appellant lacks standing to maintain the appeal, and that appellant lacks the capacity to maintain the appeal. We deny appellee's motion to dismiss, and we affirm the trial court's judgment.

**Background Facts**

Appellee is a Type A general law municipality located in Parker County. In March 2011, appellant sued appellee, claiming that through an ordinance passed a month before, appellee had illegally annexed a 40.881-acre vacant tract of land in Parker County that appellant owned at that time. Specifically, appellant pleaded for a declaratory judgment[1] that appellee's annexation ordinance was void under section 43.028 of the local government code[2] because appellee "never obtained [appellant's] consent before annexing the [p]roperty" and because the property was a "geographically separate tract that [was] unoccupied." Along with the declaratory judgment, appellant sought attorney's fees.[3]

To its original petition, appellant attached a petition requesting annexation that was signed by twelve individuals and that stated in part,

> We, the undersigned qualified voters [and] residents residing within the tract of land identified as Exhibit "A" to this Petition, . . . do hereby petition the Town of Annetta to annex the area of land identified in Exhibit "[A]" hereto. The signatures contained in this Petition represent the majority of the qualified voters living within the area identified in Exhibit "A". The area identified within Exhibit "A" is contiguous with the corporate limits of the Town of Annetta and is

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2008).

[2]*See* Tex. Loc. Gov't Code Ann. § 43.028 (West 2008).

[3]*See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (stating that in any proceeding brought under chapter 37 of the civil practice and remedies code, the court "may award costs and reasonable and necessary attorney's fees as are equitable and just").

2

within the extraterritorial jurisdiction of the Town of Annetta and not within the extra territorial jurisdiction of any other municipality. Attached as Exhibit "B" is an affidavit stating the total number of qualified voters in the area proposed for annexation.

The petition requesting annexation included a map and affidavits attesting that the petition had been signed by a majority of registered voters in the territory subject to Exhibit A.

In answering the suit, appellee contended that section 43.024 of the local government code[4] authorized the annexation of appellant's property without appellant's consent, and appellee also requested attorney's fees. Appellant eventually amended its petition to assert two additional affirmative claims: another declaratory judgment claim for a declaration that appellant had established a nonconforming use of its property as a manufactured home community prior to annexation and was therefore entitled to continue that use; and an inverse condemnation claim, alleging that the annexation qualified as a regulatory taking by restricting the use of the property and by diminishing its value. In the amended petition, appellant alleged that it had intended to use the property for a manufactured home community, that it had spent several thousand dollars in preparing the property for that purpose, and that neighbors of the property had sought annexation by appellee "in an effort to prohibit the [p]roperty's use as a manufactured home community." Also, appellant stated in the amended petition that it was in the course of pursuing administrative

---

[4]*See* Tex. Loc. Gov't Code Ann. § 43.024 (West 2008).

3

remedies with appellee to "seek nonconforming prior use designation or to seek compensation for [a] regulatory taking."

Both sides sought summary judgment, and appellee also filed a plea to the jurisdiction on appellant's nonconforming use and inverse condemnation claims, contending that those claims were not ripe for adjudication. To its motion for summary judgment, appellee attached a petition requesting annexation (which expressed that it contained signatures representing the majority of the qualified voters in the area to be annexed), affidavits from landowners attesting that the signatures on the petition were for the purpose of requesting annexation and that the territory that was annexed was "contiguous and adjacent to the Town of Annetta," and annexation ordinances 119 and 119-A, which, according to Town Secretary Daina Lawler's affidavit, annexed appellant's property. Both ordinances recited that an affidavit had been filed with appellee "stating the fact that a majority of the qualified voters of an area less than 1/2 mile wide and contiguous to the Town . . . [had] voted in favor of becoming a part of the Town pursuant to [section 43.024]," and the ordinances therefore annexed a ninety-seven-acre area (as set forth in exhibits to the ordinances through metes and bounds descriptions of six tracts) into the town.

Sid Whitener, appellant's manager in April 2012, signed an affidavit that appellant attached to its motion for summary judgment. In the affidavit, Whitener swore that appellant's 40.881-acre tract was bordered by Duncan Road on its east side, a creek on its west side, a fifty-acre ranch on its north side, and

4

appellee's city limits on its south side. Whitener stated that there were "no common boundaries between [appellant's property] and the remainder of the other allegedly annexed tracts" and that appellant's property was "a separate and distinct tract of land, different in character than the remainder of the annexed property." He also swore that appellant's property was vacant and had no residents; that in September 2010, appellant began preparations to use the property as a manufactured home community, including building a septic system; and that it was "well known around Annetta that the [p]roperty was being utilized as a manufactured home community."

Contrary to the facts contained in Whitener's affidavit, however, Cynthia Waters swore in an affidavit, which appellee attached to a response to appellant's summary judgment motion, that she is familiar with appellant's property's boundaries, that appellant's property bordered the north property line of her property, that appellee's city limits bordered the south property line of her property, and that her property was therefore outside of appellee's city limits before the annexation but was annexed along with appellant's property. Waters's affidavit also stated, "At the time of the annexation three qualified voters, including me and members of my immediate family resided in the area of the Waters property . . . . All three of us voted to become a part of the City of Annetta."

In May 2012, the trial court struck some of the summary judgment evidence that appellant had submitted, granted appellee's motion for summary

5

judgment and plea to the jurisdiction, denied appellant's motion for summary judgment, decreed that appellant would "take nothing by its suit," and awarded attorney's fees for appellee. Appellant filed a motion for reconsideration and a motion for new trial, and after appellee responded to those motions, the trial court denied them. Appellant brought this appeal.

**Appellee's Motion to Dismiss This Appeal**

After the parties presented their contentions on the merits of this appeal through their briefs and oral arguments, and after this appeal was submitted in January 2013, in March 2013, appellee notified this court that appellant no longer owns the property at issue because it has been foreclosed upon. Appellee provided a foreclosure sale deed establishing that Texas Bank Financial purchased the property.

On March 19, 2013, we sent a letter to appellant to express our concern about the possibility of the appeal becoming moot in light of the foreclosure. On April 1, 2013, appellant responded to our letter, contending that the appeal was not moot because there was a live controversy concerning attorney's fees sought by both parties;[5] because appellant could still appeal the dismissal of its inverse condemnation claim since its standing to do so was vested at the time of the

---

[5]Appellant asserted that if the order granting summary judgment was reversed, then appellant would no longer be responsible for the attorney's fees awarded to appellee by the trial court. Appellant also contended that it maintained a claim for attorney's fees "should it be successful on its motion for summary judgment."

6

taking, when appellant owned the property; and because there was "a pending lawsuit against [appellant] for a deficiency judgment as a result of the foreclosure," which, according to appellant, could be impacted by our ruling on the annexation issue. On April 15, 2013, appellee filed a motion to dismiss this appeal, arguing, in part, that the issues in the appeal were moot and that appellant could no longer maintain the appeal because it had forfeited its "corporate existence." Appellant did not respond to appellee's motion to dismiss.

Although appellee has proved that appellant no longer owns the property subject to this appeal because it has been foreclosed upon and that appellant's charter has been forfeited by the secretary of state, for several reasons, precedential and persuasive authority constrains us to deny appellee's motion to dismiss. First, although appellant's lack of ownership of the property subject to the annexation could ordinarily render a similar appeal moot and subject to dismissal,[6] the supreme court has held that a declaratory judgment appeal does not become moot, despite the elimination of an otherwise justiciable controversy because of events occurring during the appeal, when a party sought attorney's fees in the trial court and continues to seek them on appeal. *Allstate Ins. Co. v.*

---

[6] *See, e.g.*, *Robert Thompson & Co. v. City of San Antonio*, 44 S.W.2d 972, 972 (Tex. Comm'n App. 1932); *Moss-Schulze v. EMC Mortg. Corp.*, 280 S.W.3d 876, 877 (Tex. App.—El Paso 2008, pet. denied); *see also In re M.R.J.M.*, 280 S.W.3d 494, 499 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) ("The mootness doctrine prevents courts from rendering advisory opinions . . . . An issue may become moot when a party seeks a ruling on some matter that, when rendered, would not have any practical legal effect on a then-existing controversy.").

7

*Hallman*, 159 S.W.3d 640, 642–43 (Tex. 2005) (citing *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)); *see also Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 774–75 (Tex. App.—Dallas 2011, no pet.) (citing *Hallman* for the proposition that "a case under the Declaratory Judgments Act remains a live controversy, even if all requests for substantive declaratory relief become moot during the action's pendency, as long as a claim for attorneys' fees under the Act remains pending"); *Tex. Dep't of Transp. v. Tex. Weekly Advocate*, No. 03-09-00159-CV, 2010 WL 323075, at *3 (Tex. App.—Austin Jan. 29, 2010, no pet.) (mem. op.) (stating that an "appeal from the grant or denial of attorney's fees, at least with respect to a [declaratory judgment] claim, is usually a separate controversy and can persist even when the underlying controversy is moot"); *Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 901 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[I]n the case under review, the duty-to-defend issue is not moot because Williams is appealing the trial court's denial of its request for Chapter 37 attorney's fees.").

In response to appellant's contention that the resolution of issues concerning attorney's fees precludes this appeal from being moot, appellee notified this court that it had filed a document in the trial court releasing appellant from the payment of any attorney's fees. The document filed in the trial court, entitled "Release of Judgment," states in part that appellee "fully and forever . . . release[d] [the] portion of the judgment awarding attorney's fees." Nonetheless,

8

appellant has maintained its claim to attorney's fees and is appealing the trial court's denial of those fees. Thus, under the cases cited above, appellant's appeal is not moot.[7]

In addition to asserting that this appeal is moot, appellee argues for dismissal of the appeal on the ground that appellant lacks standing because it "no longer owns the property at issue" and is "no longer suffering any special or peculiar burdens from the annexation." *See Town of Flower Mound v. Sanford*, No. 02-07-00032-CV, 2007 WL 2460329, at \*3 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op.) ("[A] private citizen has standing to challenge a void annexation ordinance if the private citizen shows a special burden under the ordinance."). We conclude that appellee's apparent contention that appellant once had standing to contest the annexation but now does not is indistinguishable from appellee's argument that this appeal has become moot, and we therefore overrule that argument for the reason expressed above. *See Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) (explaining that the Supreme Court has acknowledged that mootness is the "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its

---

[7]Appellant contends that there are other reasons preventing its appeal from becoming moot. In light of our conclusion that appellant's appeal from the denial of attorney's fees in its favor prevents the appeal from becoming moot, we decline to address appellant's other arguments on mootness. *See* Tex. R. App. P. 47.1.

existence (mootness)") (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 1209 (1980)); *David Powers Homes, Inc. v. M.L. Rendleman Co.*, 355 S.W.3d 327, 334 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (explaining that mootness comprises a loss of standing by a party to maintain a claim).

Finally, appellee contends that we should dismiss this appeal because the secretary of state forfeited appellant's charter during the pendency of the appeal. Appellee relies on a provision of the tax code that states that when the privileges of a corporation are forfeited, the corporation shall be "denied the right to sue or defend in a court of this state." Tex. Tax Code Ann. § 171.252(1) (West 2008). Appellee argues that under section 171.252(1), appellant has "no right to continue this appeal or seek affirmative relief before this Court." But federal and state courts have long interpreted the language now expressed in section 171.252 to preclude entities only from filing a suit after forfeiting their right to do business, not to prohibit them from continuing an action filed when privileges had not been forfeited. *See, e.g.*, *Tex. Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 403–04 (5th Cir. 2008); *Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *5–6 (Tex. App.—Austin May 27, 2010, pet. denied) (mem. op.); *Rushing v. Int'l Aviation Underwriters, Inc.*, 604 S.W.2d 239, 241–42 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.); *Deveny v. Success Co.*, 228 S.W. 295, 296 (Tex. Civ. App.—San Antonio 1921, writ ref'd). Thus, we overrule appellee's

argument that the appeal should be dismissed based on the forfeiture of appellant's charter.

Because we have overruled all of the grounds for dismissal asserted in appellee's motion to dismiss this appeal, we deny that motion.

### The Trial Court's Rulings on the Summary Judgment Motions and on Appellant's Postjudgment Motions

In its first and third issues, appellant contends that the trial court erred by granting summary judgment for appellee and by denying appellant's motion for summary judgment. In its second issue, appellant argues that the trial court erred by striking parts of an affidavit that appellant attached to its motion for summary judgment. In its fourth issue, appellant contends that the trial court erred by denying its motion for reconsideration and its motion for new trial based on newly discovered evidence.

Appellee sought a traditional summary judgment on the ground that evidence established the propriety of the annexation under section 43.024 of the local government code. Appellee also sought a no-evidence summary judgment on the ground that there was "no evidence of any annexation under [section 43.028 of the local government code,] nor of any violation of any legal requirement for annexation . . . under [section] 43.024," nor that the "area annexed [was] not a single geographic area." Appellant sought summary judgment on the bases that its property was not subject to annexation under section 43.024 because it was "entirely unoccupied"; that the property was only

11

subject to annexation under section 43.028, which required appellant's consent; and that because appellant did not give consent, annexation was improper under section 43.028.

Appellant responded to appellee's motion for summary judgment and plea to the jurisdiction by reiterating its contention that section 43.024 could not support the annexation because appellant's property was unoccupied and was geographically separated by Duncan Road from the other properties that appellee had annexed.[8] Appellant also asserted that fact issues existed concerning whether a majority of qualified voters in the annexed area had been in favor of the annexation and whether the signatures contained on the petition were of qualified voters in the area. Also, appellant responded to appellee's plea to the jurisdiction by contending that it was not required to pursue administrative remedies before filing its nonconforming use and inverse condemnation claims. Appellee responded to appellant's motion for summary judgment by objecting to parts of an affidavit that appellant had filed with its motion and by arguing, among other contentions, that appellant had misinterpreted sections 43.024 and 43.028.

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When both parties move for summary

---

[8]This argument assumes that a fact contained in Whitener's affidavit (that the south border of appellant's property was appellee's city limits before the annexation) is true and that a fact contained in Waters's affidavit (that her property bordered the south end of appellant's property and was outside of appellee's city limits before both properties were annexed) is not true.

12

judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

In a traditional summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of

13

material fact.  *See* Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

Appellee concedes that the annexation of appellant's property cannot be upheld under section 43.028 because appellant did not consent to the annexation; thus, the primary issue we must resolve in this appeal is whether section 43.024 supported the annexation.  Section 43.024, titled "Authority of Type A General-Law Municipality to Annex Area on Request of Area Voters," states in part,

>    (a) This section applies only to the annexation of *an area* that:
>
>        (1) is one-half mile or less in width; and
>
>        (2) is contiguous to a Type A general-law municipality.
>
>    (b) If a majority of the qualified voters of *the area* vote in favor of becoming a part of the municipality, any three of those voters may prepare an affidavit to the fact of the vote and file the affidavit with the mayor of the municipality.
>
>    (c) The mayor shall certify the filed affidavit to the governing body of the municipality.  On receipt of the certified affidavit, the governing body by ordinance may annex *the area*.

Tex. Loc. Gov't Code Ann. § 43.024 (emphasis added).

Appellee correctly summarizes appellant's arguments against annexation under section 43.024 as being that Duncan Road separates appellant's property from other properties subject to the annexation, thus making appellant's property geographically separate and preventing the annexation from comprising one "area"; that appellant's property is unoccupied; and that the annexation ordinance

14

described six distinct tracts of land.[9] Appellee contends, however, that none of these facts asserted by appellant, even if true, "would render its property incapable of being included in the . . . annexation area" under section 43.024.

In support of its arguments about the alleged inapplicability of section 43.024 to the annexation at issue, appellant principally relies on our decision in *City of Northlake v. E. Justin Joint Venture*, 873 S.W.2d 413 (Tex. App.—Fort Worth 1994, writ denied). There, the City of Northlake, which had been a small type B general-law municipality, had attempted to convert to a type A general-law municipality[10] and to annex property that was in the process of being turned into a landfill. *Id.* at 415–16. In describing Northlake's attempt to annex thousands of acres into its city limits, including the proposed-landfill property (the Property) owned by East Justin Joint Venture (Justin), we stated,

> The northern boundary of the Property lies along the south edge of F.M. 407, which runs generally east to west. The incorporated limits of Northlake lie immediately to the north of F.M. 407 and the Property. . . .
>
> . . . Northlake's Mayor and Secretary solicited signatures on an annexation petition from inhabitants on a tract of land located north of F.M. 407 and about 600 feet east of the Property. The . . . Property is unoccupied, and thus none of the signatures on the

---

[9]Appellant expresses in its brief that the "heart of this appeal really turns on just one issue: whether the owner of unoccupied land that is currently being developed . . . can have that land lumped together with other noncontiguous property . . . [and] annexed by a municipality . . . without that landowner's consent."

[10]*See* Tex. Loc. Gov't Code Ann. §§ 5.001, 5.002, 6.011, 6.012 (West 2008).

15

petition was from the Property.   Under the Northlake annexation ordinance at issue in this case, the . . . Property and the east tract from which petition signatures were solicited were joined by a 600 foot long strip of land the width of the F.M. 407 right-of-way.   The engineer's property description (field notes) attached to the petition thus described one unified tract joined by the F.M. 407 strip.

*Id.*

After Northlake passed ordinances purporting to change to a Type A municipality and to annex the Property, Justin sued for a declaration that those ordinances were void, and a trial court declared them void.  *Id.* at 416.  Northlake appealed.  *Id.*  After holding that Northlake had not properly converted to a Type A municipality, that its ordinance in which it attempted to do so was void, and that its ordinance attempting to annex the Property was void for reasons unrelated to issues in the present appeal, we concluded that the annexation ordinance was also void based on the geographic character of the tracts purportedly annexed, explaining,

> A general law municipality with a population of 1,000 or less cannot unilaterally annex land; it must either obtain the consent of the property owner, if the land is occupied by less than three qualified voters, or the consent of a majority of qualified voters inhabiting an occupied annexed area.  As previously stated, the . . . Property and F.M. 407 right-of-way are unoccupied, and neither [Justin] nor the State gave consent to Northlake.   The annexed land east of Northlake was occupied, and consent from a majority of the qualified voters within that tract was obtained.   At the heart of [Justin's] argument is the proposition that the . . . Property, the F.M. 407 right-of-way, and the annexed property east of Northlake's original corporate limits are actually three separate tracts of land different in character, and thus not capable of unified annexation as a single tract.  *If these are held to be geographically separate tracts, and not one unified tract, the statutory provisions governing the annexation of unoccupied land must be followed, rather than the petition*

16

*process that was used by Northlake. . . .* Northlake, in order to create one unified tract, has annexed a 600 foot long connecting right-of-way to join what otherwise would be two completely separate tracts with no common boundary. We hold that the . . . Property, and the property east of Northlake where occupant consent was obtained, are geographically separate tracts, and Northlake must obtain owner consent before annexing the . . . Property.

*Id.* at 417–20 (emphasis added) (citations omitted).

Relying on the rationale expressed in *Northlake*, appellant argues that the annexation ordinance in this case is similarly improper because appellant produced evidence that before the passing of the annexation ordinances, its property was bordered on the south by appellee's city limits (meaning that contrary to Cynthia Waters's affidavit, her property to the south was already within the city limits), and appellant's property is therefore geographically separated by a road from all of the other parcels that appellee annexed. Appellee retorts that the plain language and history of section 43.024 demonstrates that the restrictions of "what can be a permissible 'area' for annexation . . . are limited to the width of the area" and that to the extent that we "added an additional limitation in the *Northlake* case, that case can easily be distinguished from this one."

We agree with appellee that appellant's interpretation of our *Northlake* opinion—that the mere traversing of a road renders tracts geographically separate and prevents their annexation together under section 43.024—is unsupported by the language in that opinion. We did not expressly conclude in *Northlake* that an intersecting road always causes two tracts to be geographically

17

separate. Rather, we concluded that under the facts of that case, the "600 foot long connecting right-of-way [could not] join what otherwise would be two completely separate tracts with no common boundary." *Id.* at 420. Appellant has not directed us to evidence indicating that the width of Duncan Road approaches the "600 foot long connecting right-of-way" at issue in *Northlake* or that, like in *Northlake*, appellant's property was 600 feet away from the closest property owned by a voter for annexation. Also, although we cited a case in *Northlake* for the apparent proposition that another court of appeals had invalidated an annexation because it had traversed a road, the case that we cited did not include any analysis supporting that proposition but instead contained language invalidating the annexation at issue for other reasons. *See id.* (citing *City of Deer Park v. State ex rel. Shell Oil Co.*, 259 S.W.2d 284, 287 (Tex. Civ. App.—Waco 1953), *aff'd*, 154 Tex. 174, 275 S.W.2d 77 (1954)).

Our research has not revealed any authority citing *Northlake* for the proposition that the inclusion of a road within an area automatically renders the area incapable of annexation under section 43.024. And neither the plain language of section 43.024—which simply applies to the "annexation of an area"[11]—nor decisions applying section 43.024 or the statute that preceded section 43.024, support such a proposition.

---

[11]"We start with the plain language of the statutes in construing them." *Denton Cnty. Elec. Co-op., Inc. v. Hackett*, 368 S.W.3d 765, 781 (Tex. App.—Fort Worth 2012, pet. denied).

18

For example, in *State v. City of Waxahachie*, the city, through a statute similar to the language currently included in section 43.024, annexed property adjoining the city on its east, north, and west sides. 81 Tex. 626, 628–32, 17 S.W. 348, 348–49 (1891). A branch off of a creek separated part of the annexed property on the west side of the city from other annexed property. *Id.* at 628, 17 S.W. at 348. Also, the annexed territory on the west side of the city "was occupied by a separate and distinct community from those who resided upon the part of the annexed territory that [was] situated on the north and east of the [city]." *Id.* at 630, 17 S.W. at 349. Finally, the substantial majority of the annexed property was used exclusively for agricultural purposes. *Id.* at 631, 17 S.W. at 349. Despite these facts, the supreme court upheld the annexation, explaining in part,

> The legislature having prescribed a certain limit to which the boundaries of a city may be extended, without expressing any qualification, the right to so extend them results, *without regard to the use or character of the occupation of the annexed territory. . . . As the statute under which the proceedings were conducted makes no discrimination with regard to the form or extent of new territory that may be added to a city, other than a limitation upon its width, we do not feel authorized to do so.* If there may exist in any case good reasons why any other limitation of the area of adjacent territory than the one with regard to its width should be prescribed, such reasons must be addressed to the legislature, and not to the courts. In this case, while the annexed territory lies on different sides of the original town, *it comprises but one body of land.*

*Id.* at 632, 17 S.W. at 350 (emphasis added). Although the supreme court cautioned that a "different question" would be presented if the city had attempted to annex "detached areas," it implicitly concluded that neither the branch of

19

water, nor the separate and distinct community, nor the different uses of the annexed property, nor the fact that the annexed property bordered three sides of the city, caused such detachment. *See id.*

Like the statute at issue in *Waxahachie*, section 43.024 does not contain a limitation with regard to the use or character of the occupation of the annexed territory. *See* Tex. Loc. Gov't Code Ann. § 43.024. Thus, under the facts and holding in *Waxahachie* as compared to the facts relevant to this appeal, we hold that appellee's annexation ordinances were not void simply because they crossed a road and included appellant's unoccupied property. *See* 81 Tex. at 632, 17 S.W. at 350; *see also City of Gladewater v. State ex rel. Walker*, 138 Tex. 173, 177–78, 157 S.W.2d 641, 643 (1941) (upholding a city's annexation under a statute similar to section 43.024 when the annexation contained land on all four sides of the city; the land was owned by varied individuals; and the land owned by the party challenging the annexation, which was in the southwestern part of the city, was allegedly wholly unfit for habitation, while other land subject to the annexation, in the northern and eastern parts of the city, was residentially occupied and was adjacent to state highways).[12]

The plain language of section 43.024, which does not expressly contain the limitations on annexation that appellant urges; the supreme court's holdings

---

[12]Some of the facts present in *Walker* are included in the court of civil appeals's decision that the supreme court reversed. *See State ex rel. Walker v. City of Gladewater*, 139 S.W.2d 283, 285 (Tex. Civ. App.—Texarkana 1940), *rev'd*, 138 Tex. at 178, 157 S.W.2d at 643.

20

in *Gladewater* and *Waxahachie*; and the distinguishable facts and holding of this court in *Northlake* all persuade us that the facts that appellant relies on to challenge the annexation (including the alleged separation of appellant's property by a road from the other annexed properties and the unoccupied nature of appellant's property) do not raise a genuine issue of material fact concerning whether appellant's property was incapable of being annexed under section 43.024. *See* Tex. R. Civ. P. 166a(i); *Hamilton*, 249 S.W.3d at 426. Thus, we overrule appellant's first and third issues to the extent that they challenge the trial court's decisions to grant summary judgment for appellee and deny summary judgment for appellant on appellant's arguments discussed above.

For similar reasons, we must overrule appellant's contention that the trial court reversibly erred by sustaining appellee's objections to three paragraphs in Whitener's affidavit and by denying appellant's motions for reconsideration and for new trial. In the paragraphs of Whitener's affidavit that the trial court struck, he swore that the south side of appellant's property was adjacent to appellee's city limit, that there were "no common boundaries" between appellant's property and the remainder of the annexed tracts, and that appellant's property was a separate and distinct tract of land. In appellant's motions for reconsideration and for new trial, it argued, in effect, that newly discovered evidence substantiated that before the annexation, appellee's city limit was the southern border of appellant's property and not the southern border of Waters's property, as she

21

had sworn to.[13]  Under our analysis above, we hold that none of these facts, even if true, affect the propriety of annexation under section 43.024 under the circumstances of this case.  Thus, we conclude that the trial court did not abuse its discretion by denying appellant's motions for consideration and for new trial and that if the trial court erred by striking the paragraphs in Whitener's affidavit, that error was harmless.[14]  *See* Tex. R. App. P. 44.1(a); *Hampton‑Vaughan Funeral Home v. Briscoe*, 327 S.W.3d 743, 747 (Tex. App.—Fort Worth 2010, no pet.); *Diamond v. Eighth Ave. 92, L.C.*, 105 S.W.3d 691, 697 (Tex. App.—Fort Worth 2003, no pet.).

Finally, appellant contends that the trial court erred by granting appellee's motion for summary judgment because a genuine issue of material fact exists "as to whether the petition upon which the annexation was based was invalid." Specifically, appellant argues that appellee did not prove compliance with section

---

[13]To its motion for new trial, appellant attached an affidavit signed by John Grant, a Registered Professional Land Surveyor.  Grant testified, among other facts, that appellant's property was bordered by Duncan Road to the east and the Waterses' property to the south and that in 2008, appellee's city limit matched the southern border of appellant's property (meaning that the Waterses' property was already located in appellee's city limits). Grant also swore, "The only tract . . . which is contiguous to [appellant's property] is the [Waterses'] property which has been within Annetta's city limits since at least 2008.  The remainder of the tracts described in Ordinance Nos. 119 and 119-A are separated from [appellant's property] by Duncan Road."

[14]In its motion for new trial, appellant also contended that newly discovered evidence revealed that three people who had signed affidavits supporting annexation already resided within appellee's city limits at the time that they did so and were therefore not proper petitioners for annexation.  Appellant did not urge this basis for an entitlement to a new trial in its brief on appeal.

22

43.024 because it did not establish that a majority of qualified voters of the area voted in favor of becoming part of the municipality. *See* Tex. Loc. Gov't Code Ann. § 43.024(b) ("If a majority of the qualified voters of the area vote in favor of becoming a part of the municipality, any three of those voters may prepare an affidavit to the fact of the vote and file the affidavit with the mayor of the municipality."). Appellant acknowledges that appellee offered two annexation petitions in an attempt to satisfy section 43.024(b)'s requirement, but appellant contends that the first petition was defective because it did not conclusively demonstrate that a majority of qualified voters favored annexation and that the second petition was defective because an affidavit attached to it did not establish the affiants' personal knowledge. Appellee responds to these arguments by contending, in part, that any such violations of section 43.024 are procedural in nature and cannot be properly challenged by appellant.

In the trial court, as attachments to its motion for summary judgment, appellee filed three affidavits signed in December 2010 by Cynthia Waters, Curtis Lee Waters, and Dayton Sheridan. Those affidavits each stated in part,

> I am one of the signers of the attached petition requesting annexation . . . into the Town of Annetta. I have personal knowledge that the signatures on the petition are for the purpose of requesting annexation . . . . I certify that . . . this petition has been signed by a majority of the registered voters in the described Territory.

Appellant also filed an affidavit signed and sworn to by Shelby Kimball, Janet Sheridan, and J.L. Johnson in September 2011. That affidavit stated,

23

Before me the undersigned . . . personally appeared . . . [w]ho, after being by me duly sworn, on oath stated that they are three of the qualified voters of the area described in Exhibit A hereto, which is less than 1/2 mile in width and contiguous to the Town of Annetta and that a majority of the qualified voters of such area have voted in favor of becoming a part of the Town of Annetta.

Immediately before the September 2011 affidavit, the record contains a document signed by Bruce Pinckard, appellee's mayor, stating, "I hereby certify the attached affidavit to the Annetta City Council." Ordinance 119-A, passed by appellee in December 2011, recites that an affidavit had been filed with appellee's mayor "stating the fact that a majority of the qualified voters . . . [had] voted in favor of becoming a part of the Town," and the ordinance also recites that the mayor had "certified such affidavit to the City Council."

We agree with appellee that appellant lacks standing to challenge the adequacy of the affidavits that led to appellee's annexation ordinances. The supreme court has explained that the only proper method for attacking the validity of a city's annexation of territory is by a

quo warranto proceeding, unless the annexation is wholly void. . . . Therefore, the State must bring the action to question irregular use of the delegated annexation authority.

. . . By requiring that the State bring such a proceeding, we avoid the specter of numerous successive suits by private parties attacking the validity of annexations. The judgments of suits brought by private parties are binding only on the parties thereto so conflicting results might be reached in subsequent suits by other individuals. These problems are avoided by requiring quo warranto proceedings because the judgment settles the validity of the annexation on behalf of all property holders in the affected area.

. . . .

24

Historically, private challenges of annexation ordinances have been sustained and the ordinance held void in the following instances: an annexation of territory exceeding the statutory size limitations, . . . an attempted annexation of territory within the corporate limits of another municipality or which was not contiguous with its own limits, . . . [and] an attempted annexation in which the boundary of the annexed territory did not close using the description contained in the ordinance[.] The common trait in these cases is whether the municipality exceeded the annexation authority delegated to it by the Legislature. . . .

. . . Alexander's allegations directed at whether the service plan was adequate and whether a quorum was required to conduct the hearing are matters that could be raised in a direct attack by quo warranto, but are insufficient grounds for a private challenge.

*Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436–38 (Tex. 1991) (citations omitted); *see City of Wichita Falls v. Pearce*, 33 S.W.3d 415, 417 (Tex. App.—Fort Worth 2000, no pet.) (citing *Seguin* and holding that a trial court had no jurisdiction outside of a quo warranto proceeding to consider complaints about annexation that concerned a facially invalid service plan); *May v. City of McKinney*, 479 S.W.2d 114, 120 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.) ("[T]o maintain a collateral attack, [a private party] must show an entire want of power on the part of the city to annex[,] and it is not sufficient to allege a mere irregularity in the exercise of annexation authority.").

Defects in the "process of adopting an annexation ordinance" cannot be challenged outside of a quo warranto proceeding. *City of San Antonio v. Summerglen Prop. Owners Ass'n Inc.*, 185 S.W.3d 74, 83 (Tex. App.—San Antonio 2005, pet. denied). For example, in *City of Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.*, a private party, who challenged a city's annexation conducted

25

under section 43.024, complained that "[o]ne of the persons who signed the annexation petition was not an inhabitant of the area annexed." 890 S.W.2d 459, 462 (Tex. App.—Dallas 1994), *aff'd*, 904 S.W.2d 656 (Tex. 1995). The Dallas Court of Appeals held that the party did not have standing to assert its claim about the improper signature because the claim alleged an irregularity "made by the City in the exercise of its annexation power granted by the legislature and, if valid, would render the ordinances voidable [but] not void." *Id.* at 464. The supreme court affirmed that conclusion, explaining, "Laidlaw has no standing to challenge the annexation on procedural grounds, such as alleged failures to meet the notice and signature requirements, and accordingly, we do not consider those procedural challenges." *City of Wilmer*, 904 S.W.2d at 658.

Similarly, we conclude that appellant's complaints about the contents of the annexation petitions and affidavits relate to appellee's procedure in adopting the annexation ordinance rather than whether appellee acted without the color of law in annexing appellant's land, which would make its action void. *See id.*; *City of Balch Springs, Tex. v. Lucas*, 101 S.W.3d 116, 120 (Tex. App.—Dallas 2002, no pet.) (stating that private causes of action have been allowed to challenge the character or size of land annexed but not deficiencies in the procedure of adopting the annexation ordinance). We hold that appellant lacks standing to complain of the procedures related to the annexation, and we overrule appellant's procedural arguments as a basis for challenging the trial court's summary judgment order.

26

For all of these reasons, we conclude that the trial court did not err by granting appellee's motion for summary judgment on appellant's claim for a declaration that the annexation ordinances were void, did not err by denying appellant's motion for summary judgment on that claim and by denying appellant's motions for reconsideration and for new trial, and did not reversibly err by granting appellee's objections to parts of appellant's summary judgment evidence. We overrule appellant's first through fourth issues.

**The Trial Court's Decision to Grant Appellee's Plea to the Jurisdiction and to Deny Appellant's Request for Attorney's Fees**

In its fifth issue, appellant argues that the trial court erred by granting appellee's plea to the jurisdiction and by therefore concluding that appellant's nonconforming use and inverse condemnation claims were not ripe. In those claims, appellant pled for a declaratory judgment that it could continue a use of its property that existed at the time of the annexation but was nonconforming afterwards,[15] and appellant also pled for compensation under the federal and state constitutions for a regulatory taking. In the trial court, appellee, in conjunction with seeking summary judgment, filed a plea to the jurisdiction of appellant's inverse condemnation and nonconforming use claims on the ground that they were not ripe because appellant had not exhausted administrative remedies from appellee such as seeking development of the property.

---

[15]On the day that appellee annexed appellant's property, appellee zoned it for single family residential use.

27

"If a court lacks subject matter jurisdiction in a particular case, then it lacks authority to decide that case. . . . Whether the trial court has subject matter jurisdiction is a question of law that we review de novo." *Mustang Special Util. Dist. v. Providence Vill.*, 392 S.W.3d 311, 315 (Tex. App.—Fort Worth 2012, no pet.) (op. on reh'g).

Ripeness is an element of subject matter jurisdiction. *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 393 (Tex. App.—Fort Worth 2008, no pet.); *see Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). A case is "not ripe when its resolution depends upon contingent or hypothetical facts or upon events that have not yet come to pass." *Tex. Bay Cherry Hill, L.P.*, 257 S.W.3d at 393 (citing *Waco ISD v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000)). "In addition to restraining courts from issuing unconstitutional advisory opinions, ripeness also has a pragmatic, prudential aspect that aims to conserve judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Id.*

Declaratory judgments are subject to a ripeness review. *Id.*; *see Riner v. City of Hunters Creek*, No. 14-12-00339-CV, 2013 WL 3087061, at *2 (Tex. App.—Houston [14th Dist.] June 20, 2013, no pet. h.). A declaratory judgment action "does not vest a court with the power to pass upon hypothetical or contingent situations, *or to determine questions not then essential to the decision of an actual controversy*, although such questions may in the future require adjudication." *Harris Cnty. Mun. Util. Dist. No. 156 v. United Somerset Corp.*,

28

274 S.W.3d 133, 139–40 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (emphasis added) (quoting *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pets. denied)). A declaratory action need not concern a present lawsuit but may include "threatened litigation in the immediate future that seems unavoidable." *Id.* at 140.

In other words, an action for declaratory judgment is appropriate when the fact situation manifests the present "ripening seeds" of a controversy. *See Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 683 (Tex. App.—Austin 2004, no pet.). Ripening seeds of a controversy "appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy." *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 154 (Tex. App.—Austin 1998, no pet.); *see Tex. Bay Cherry Hill, L.P.*, 257 S.W.3d at 393 ("[A] declaratory judgment action is premature if governmental proceedings which will impact the parties' respective rights remain pending.").

Here, appellant pled for a declaration that as a result of section 43.002 of the local government code, it was entitled to continue its use of its property as a manufactured home community. Section 43.002 states, in part, that after a municipality annexes property, it may not "prohibit a person" from "continuing to use land in the area in the manner in which the land was being used on the date the annexation proceedings were instituted if the land use was legal at that time."

29

Tex. Loc. Gov't Code Ann. § 43.002(a)(1) (West 2008). But according to evidence that appellee attached to its plea to the jurisdiction, from the time of the annexation ordinances in February and December 2011 until March 2012, appellant had

> not filed any documentation with [appellee] seeking to develop its property or to seek non-conforming use status. [Appellant had] not sought any building permits or permission to construct anything on its property. [Appellee had] a zoning board of adjustment and [appellant had] not attempted to obtain any hearing to determine the non-conforming status of its property or appeal the determination of an administrative official.

Thus, we conclude that because governmental proceedings that could have impacted and validated appellant's rights to develop its property as a manufactured home community were available to appellant but had not been instigated at the time appellant sought its declaration, appellant's claim was not essential to the determination of an actual controversy and was therefore not ripe. *See Tex. Bay Cherry Hill, L.P.*, 257 S.W.3d at 394 (holding that declaratory judgment claims concerning a city's proposed exercise of its eminent domain power were not ripe and that the dismissal of the claims presented no hardship on the plaintiff because it could "assert its declaratory judgment action if and when the City [did] attempt to exercise its eminent domain power"); *see also Robinson*, 353 S.W.3d at 755 (holding that plaintiffs' claim for a declaration that a voter-approved initiative was valid and enforceable was not ripe when the plaintiffs did not have a concrete injury because the record was silent concerning whether they city had failed to comply with the initiative or would soon fail to

comply with it); *Harris Cnty. Mun. Util. Dist. No. 156*, 274 S.W.3d at 140 (holding that because a threatened controversy was "not unavoidable," the dispute was not ripe); *Winn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ) ("Winn instituted this suit to . . . continue his present use of the property. However, Winn must show that Irving denied him reasonable and proper use of his property through administrative remedies. Without such a showing, there was no justiciable controversy before the trial court . . . .") (citation omitted); *Thomas v. City of San Marcos*, 477 S.W.2d 322, 325 (Tex. Civ. App.—Austin 1972, no writ) (holding that there was not a justiciable controversy in a declaratory judgment action when the plaintiff claimed that he was entitled to continue a nonconforming use after an annexation but had not exhausted administrative remedies with the city that could have allowed him to continue the use).

Similarly, we must conclude that appellant's inverse condemnation claim, in which appellant asserted that appellee "went too far by restricting the permissible use of the [p]roperty," was not ripe. A regulatory takings claim is not ripe "until the governmental entity charged with implementing the regulation reaches a final decision regarding application of the regulation to the property." *Coble v. City of Mansfield*, 134 S.W.3d 449, 458 (Tex. App.—Fort Worth 2004, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998), *cert. denied*, 526 U.S. 1144 (1999)); *see State v. Little Elm Plaza, Ltd.*, No. 02-11-00037-CV, 2012 WL 5258695, at *12 (Tex. App.—Fort Worth Oct. 25, 2012,

pet. dism'd) (stating that inverse condemnation claims become "jurisdictionally ripe (as not having an injury that is too remote to be adjudicated) only after the government reaches a final decision about how a regulation applies to property and after a plaintiff has been denied a variance from the government").

Appellant contends in its reply brief that it would have been futile to seek administrative remedies because the "very reason for annexing [appellant's] property was to prevent it from finalizing the upscale manufactured housing community." *See Mayhew*, 964 S.W.2d at 929 ("[F]utile variance requests or re-applications are not required."). To support this argument, appellant cites to a part of the record establishing that someone who owned land near appellant's land did not want appellant to operate a manufactured home community. Appellant has not directed us to any evidence in the record, however, substantiating that appellee shared this sentiment when it annexed appellant's property or establishing that appellee would have necessarily refused an administrative request to allow appellant's nonconforming use of its property. Also, appellant's claim that it would have been futile to seek administrative remedies is at odds with the statement in its first amended petition that it was "pursuing all administrative remedies."

We conclude that because appellant did not apply for nonconforming use status from appellee, appellant cannot show that appellee reached a final decision concerning the property, and appellant's inverse condemnation claim was also not ripe.

For these reasons, we conclude that the trial court did not err by granting appellee's plea to the jurisdiction on appellant's nonconforming use and inverse condemnation claims.  We overrule appellant's fifth issue.

In its sixth issue, appellant argues only that as a result of its assertion that the remainder of the trial court's judgment should be reversed, the part of the judgment awarding attorney's fees for appellee (and therefore denying them for appellant) should also be reversed.  *See JVA Operating Co. v. Kaiser-Francis Oil Co.*, 11 S.W.3d 504, 508 (Tex. App.—Eastland 2000, pet. denied) (reversing an award of attorney's fees associated with a declaratory judgment claim when reversing the part of the trial court's judgment that gave declaratory relief).  Since we have overruled each of appellant's other issues and therefore conclude that the trial court's judgment should be affirmed, we overrule appellant's sixth issue.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

DELIVERED:  August 22, 2013

33